Richard Allan MORAN, Petitioner–
Appellant,

v.

Salvador GODINEZ, Warden,
Respondent–Appellee.

No. 91–15609.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 19, 1992.

Decided July 30, 1992.

·Cal J. Potter, III, Las Vegas, Nev., for petitioner-appellant.

Stuart J. Newman, Deputy Atty. Gen., Carson City, Nev., for respondent-appellee.

Before: FARRIS, PREGERSON, and THOMPSON, Circuit Judges.

PREGERSON, Circuit Judge:

Richard Moran was convicted and sentenced to death by a Nevada state court for three counts of capital murder. After exhausting his state remedies, Moran filed a petition in federal district court for a writ of habeas corpus. The district court denied Moran's petition, and Moran appeals. For the reasons set forth below, we reverse.

## I.

Richard Moran was still recovering from a suicide attempt in which he had slashed his wrists and shot himself in the abdomen when he appeared before a Nevada state court in November 1984 charged with three counts of capital murder. At that time, he discharged his counsel, changed his pleas to guilty, refused the court's offer of standby counsel, and announced that he wanted no mitigating evidence presented on his behalf. Moran expressed extreme remorse over shooting and killing two people at the Red Pearl Saloon and then shooting and killing his ex-wife Linda Vandervoort at her home several days later.

On the day that Richard Moran discharged his counsel and changed his pleas, he was taking four different kinds of drugs. When the state judge asked Moran if he was taking drugs, he replied that he was on medication. The state judge inquired no further on this issue. The court accepted Moran's waiver of counsel and pleas of guilty, which Moran communicated in a series of monosyllabic responses to leading questions from the court about his legal rights and the charged offenses. In January 1985, a three-judge sentencing panel of the state court sentenced Moran to death.[1]

In July 1987, Moran filed a petition in state court for post-conviction relief, alleging that in November 1984 he was not legally competent to waive his right to counsel and to enter pleas of guilty. After an evidentiary hearing in April 1988, the state court concluded that Moran had been competent to waive counsel in November 1984 and that he had failed to prove that his guilty pleas were involuntary. The Nevada Supreme Court affirmed. 103 Nev. 138, 734 P.2d 712.

The federal district court denied Moran's petition for a writ of habeas corpus. On appeal, Moran maintains that he was not legally competent to make a voluntary, knowing, and intelligent waiver of constitutional rights at the time he discharged his counsel and changed his pleas to guilty.

We review the district court's denial of Moran's habeas petition de novo. *Harding v. Lewis*, 834 F.2d 853, 856 (9th Cir.1987), *cert. denied*, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988) (citing *Chatman v. Marquez*, 754 F.2d 1531, 1533–34 (9th Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 88 L.Ed.2d 101 (1985)). We agree with Moran that the record does not support a conclusion that he was competent to make a valid waiver of constitutional rights.[2]

## II.

When Moran discharged his counsel and pled guilty, he effectively waived a number of constitutional rights. In partic-

---

**1.** Under Nevada law, the sentencing hearing for first-degree murder is conducted by a three-member panel of state judges in cases where the defendant was tried without a jury. Nev.Rev. Stat.Ann. § 175.552. The method of execution is lethal injection. Nev.Rev.Stat.Ann. § 176.355.

**2.** Consequently, we need not reach the other issues raised by Moran on appeal.

ular, Moran waived his right to counsel, to compulsory process, to confront witnesses, to a public trial, to a jury of his peers, and his privilege against self-incrimination. *See Chavez v. United States,* 656 F.2d 512, 518 (9th Cir.1981); *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *Sieling v. Eyman,* 478 F.2d 211, 214 (9th Cir.1973). Such an extensive waiver of constitutional rights demands "utmost solicitude" from courts. *Sieling,* 478 F.2d at 214 (citing *Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712). We must indulge in every reasonable presumption against waiver of constitutional rights. *Evans v. Raines,* 800 F.2d 884, 885 (9th Cir.1986) (hereinafter *Evans II*).

 Due process requires a court to initiate a competency hearing, on its own motion if necessary, whenever it has or should have a good faith doubt about a defendant's competency to waive constitutional rights. *Seiling v. Eyman,* 478 F.2d 211 (9th Cir.1973) (competency to enter a guilty plea); *Chavez v. United States,* 656 F.2d 512 (9th Cir.1981) (same); *Evans v. Raines,* 705 F.2d 1479 (9th Cir.1973) (hereinafter *Evans I*) (competency to waive counsel); *Harding v. Lewis,* 834 F.2d 853 (9th Cir.1987) (same), *cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988). A good faith doubt should arise if there is substantial evidence of incompetence. *Harding,* 834 F.2d at 856 (citing *United States v. Veatch,* 674 F.2d 1217, 1223 (9th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982)).

 In Moran's case, there was substantial evidence available at the time he pled guilty to trigger a good faith doubt about his competency to waive constitutional rights. Moran had attempted suicide only a few months before his plea hearing.[3] In addition, Moran stated at the plea hearing that he wanted to fire his attorney to ensure that no mitigating evidence would be presented on his behalf at sentencing. Reporter's Transcript of Plea Hearing, November 24, 1985 at 11. The transcript of the plea hearing shows that virtually all of Moran's responses to the court's questions were monosyllabic. Furthermore, at the time he discharged his counsel and changed his pleas to guilty, Moran was taking four different kinds of medication, including Inderal, Dilantin, Phenobarbitol, and Vistaril. Amended Petition for Writ of Habeas Corpus, U.S. District Court for the District of Nevada, Exhibit III.[4] Although the transcript shows that Moran advised the court that he was taking medication, no further inquiry was made on this subject. Reporter's Transcript of Plea Hearing, November 24, 1985 at 12.

Given the record in this case, the state court should have entertained a good faith doubt about Moran's competency to make a voluntary, knowing, and intelligent waiver of constitutional rights. Due process therefore required the court to hold a hearing to evaluate and determine Moran's competency to waive constitutional rights before it accepted his decision to discharge counsel and change his pleas. This the state court failed to do.

## III.

 Respondent contends that any error made when the state court failed to inquire into Moran's competency to waive constitutional rights at the plea hearing was cured by the postconviction hearing held more than three years later. We disagree.

---

3. In *Drope v. Missouri,* 420 U.S. 162, 180, 95 S.Ct. 896, 908, 43 L.Ed.2d 103 (1975), the Supreme Court relied on Drope's recent suicide attempt as one of the factors supporting its conclusion that the state court should have held a hearing to determine his competency to stand trial.

4. Inderal, commonly known as a "beta-blocker," is used in the management of hypertension. Physicians' Desk Reference (42d ed. 1988) at 650–52; Docket No. 26, Exhibit III (PDR excerpts). Dilantin is an antiepileptic drug that inhibits the spread of seizure activity in the motor cortex and is related to barbiturates in its chemical structure. *Id.* at 1543–45. Vistaril is used for the relief of anxiety and tension associated with psychoneurosis. It acts on certain key regions of the sub-cortical area of the central nervous system. *Id.* at 1625–26. Phenobarbitol is a sedative generally used in conjunction with other drugs to counteract central nervous system stimulation. *Id.* at 1667–68.

After the postconviction hearing, the state court ruled that Moran was competent to waive counsel and that he failed to meet his burden of proving that his pleas were involuntary. For two reasons, this ruling did not constitute a valid finding that, in November 1984, Moran was competent to waive his constitutional rights. First, the state court's postconviction ruling was premised on the wrong legal standard of competency. Second, as we discuss in part B. below, an examination of the record in light of the correct legal standard does not show that Moran was competent to waive his constitutional rights.

### A.

It is unclear whether the presumption of correctness accorded to a state court's findings of fact under 28 U.S.C. § 2254(d)[5] extends to a state court's finding that a defendant was competent to waive constitutional rights.[6] Even if the presumption of correctness could apply to a state court's finding that a defendant was competent to waive constitutional rights, it cannot apply in Moran's case. This is so because, as the following discussion demonstrates, the state court applied the wrong legal standard to evaluate Moran's competency to waive constitutional rights.

**5.** Section 2254(d) of Title 28, U.S.Code, provides that:

In any proceeding in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ... evidenced by a written finding, written opinion, or other reliable and adequate indicia, shall be presumed to be correct....

**6.** *Creech v. Arave*, 947 F.2d 873, 879 n. 5 (9th Cir.1991) ("It is unclear whether a state court's determination of competency to plead guilty is entitled to a presumption of correctness under 28 U.S.C. § 2254(d)," and comparing *Harding*, where we applied the de novo review standard to competency to waive counsel, with *Evans II*, 800 F.2d at 887), *cert. granted,* —— U.S. ——, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992). *See also Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir.1988) ("In this circuit, a federal court must conduct an independent review of validity of a waiver."); *Grooms v. Keeney*, 826 F.2d 883, 887 (9th Cir.1987) (citing the holding in *Miller v.*

The legal standard used to determine a defendant's competency to stand trial is different from the standard used to determine competency to waive constitutional rights. A defendant is competent to waive counsel or plead guilty only if he has the capacity for "reasoned choice" among the alternatives available to him. *See Harding*, 834 F.2d at 856; *Evans II*, 800 F.2d at 887; *Chavez*, 656 F.2d at 518. By contrast, a defendant is competent to stand trial if he merely has a rational and factual understanding of the proceedings and is capable of assisting his counsel. *See Drope v. Missouri*, 420 U.S. 162, 172, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1966); *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 788, 4 L.Ed.2d 824 (1960) (per curiam); *Sieling*, 478 F.2d at 214. Competency to waive constitutional rights requires a higher level of mental functioning than that required to stand trial. *See Evans I*, 705 F.2d at 1480; *Chavez*, 656 F.2d at 518; *United States v. Aponte*, 591 F.2d 1247, 1249 (9th Cir.1978).

Our analysis of the order issued after the state postconviction hearing reveals that the state court erroneously applied the standard for evaluating competency to

*Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), that voluntariness of a confession is subject to independent federal review, in discussing whether waiver of counsel was knowing, voluntary, and intelligent).

A different reading of the cases suggests that our circuit is not split on the question whether a state court's competency determination is entitled to the presumption of correctness under section 2254(d). The question turns on the issue for review. Whether a defendant's waiver was knowing and intelligent is a mixed question of law and fact that we review de novo. *See Harding*, 834 F.2d at 857. Competency determinations, however, have been accorded the presumption of correctness. *See Evans II*, 800 F.2d at 886–87 (competency to waive counsel). It is not clear that these two propositions are in conflict. *Cf. Miller v. Fenton*, 474 U.S. at 116–17, 106 S.Ct. at 452–53 (contrasting state court determinations of a defendant's competency to stand trial with voluntariness of confessions); *Harding*, 834 F.2d at 856–59 (discussing competency to waive counsel, on the one hand, and knowing and intelligent waiver on the other, in separate sections).

stand trial, instead of the correct "reasoned choice" standard.

### 1.

In its order denying postconviction relief, the state court, in a single sentence, sought to resolve the question whether Moran had been competent to waive counsel. The court concluded that "[a]s to the claims of being mentally incompetent to represent himself, the record clearly shows that he was examined by two psychiatrists both of whom declared defendant competent."

The reports to which the state court referred were both prepared to determine Moran's competency to stand trial, not his competency to waive constitutional rights. Dr. O'Gorman and Dr. Jurasky were appointed by the state court solely to consider Moran's competency to stand trial. Neither doctor considered the question whether Moran was competent to waive counsel or to plead guilty. At the time of the examinations, Moran had not yet decided to do either, so the question of competency to waive constitutional rights was simply not before the doctors.[7]

The conclusions of the psychiatrists were the sole support for the state court's postconviction ruling that Moran was competent to waive counsel. By relying solely on the psychiatrists' conclusions that Moran was competent to stand trial more than three years earlier, the state court applied the wrong legal standard for determining Moran's competency to waive his constitutional right to counsel.

### 2.

The state court did not articulate the standard of competency it used to evaluate Moran's contention that he was incompetent to plead guilty. As noted above, the state court's order denying postconviction relief contained but one reference to the standard of competency. That single reference is found in one sentence disposing of Moran's contention that he was incompetent to waive counsel. In that sentence, the court erroneously applied the standard for competency to stand trial, not the higher reasoned choice standard required to determine competency to make a valid waiver of constitutional rights.

Because the state court order contained a solitary reference to one standard of competency, we must assume that the state court applied that single standard in evaluating Moran's contention that he was incompetent to plead guilty as well as his contention that he was incompetent to waive his right to counsel. We cannot conclude, therefore, that the state court applied the proper standard of competency to the question whether Moran was competent to plead guilty. *See Townsend v. Sain,* 372 U.S. 293, 315, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963) (assumption that state court applied the correct legal standard is appropriate unless there is evidence giving reason to suspect that an incorrect legal standard was applied).

In conclusion, the postconviction order issued by the state court does not constitute a valid finding that in November 1984 Moran was competent when he discharged his counsel and changed his pleas to guilty. The state court used the wrong legal standard to reach its conclusion that Moran was competent to waive counsel. That same erroneous standard of competency was applied when the state court concluded that Moran failed to prove that his guilty pleas were involuntary.

### B.

■ Furthermore, when we examine the record in light of the correct legal standard, we must conclude that it cannot support a finding that Moran was mentally capable of the reasoned choice required for a valid waiver of constitutional rights.[8] In particular, the psychiatric evaluations on which the state court relied do not support

---

7. Dr. O'Gorman interviewed Moran on September 12, 1984. Dr. Jurasky visited Moran on September 17, 1984. Moran waived counsel and pled guilty on November 28, 1984.

8. Because the state court applied the wrong legal standard of competency, it would be inap-

propriate for us to infer from the record before us that the state court made additional factual findings necessary to support its legal conclusion. *See Knaubert v. Goldsmith,* 791 F.2d 722, 727 (9th Cir.) (When a state court rules after an evidentiary hearing, a federal district court may

the conclusion that Moran was competent to make decisions of such serious import.

Dr. O'Gorman evaluated Moran's competency to stand trial in September 1984, several months before Moran discharged his attorney and changed his pleas. Not surprisingly, his report on Moran's mental condition focused only on those qualities that reflect competency to stand trial, not the higher level of mental functioning required for a valid waiver of constitutional rights.

Dr. O'Gorman concluded that "the patient [Richard Moran] is knowledgeable of the charges being made against him. He can assist his attorney, in his own defense, if he so desires. He is fully cognizant of the penalties if convicted." Dr. O'Gorman Psychiatric Evaluation at 2 (hereinafter "O'Gorman Report").

According to his report, Dr. O'Gorman perceived Moran to have a basic awareness of what was happening to him and of what had happened, though he also noted Moran's difficulty with his memory. *See* O'Gorman Report at 1. Dr. O'Gorman also commented that Moran was depressed and may not make the effort necessary to assist counsel in his own defense. O'Gorman Report at 3.

These observations are relevant to the question whether Moran was competent to stand trial.[9] They are inadequate, however, to show that Moran was competent according to the higher standard of reasoned choice that the law requires for a defendant to make a voluntary, knowing, and intelligent waiver of constitutional rights.

Dr. O'Gorman's report is all the weaker as an indication of Moran's competency to waive his constitutional rights because it says nothing about the effects of any medication. Consequently, the report was inadequate to resolve Moran's contention that his heavily medicated condition rendered him incompetent to waive counsel.

Dr. Jurasky's report offers no additional evidence to indicate that Moran was capable of the reasoned choice necessary for a valid waiver of constitutional rights. Nothing in the Jurasky report speaks to the effects of any medications on Moran. Like Dr. O'Gorman's report, Dr. Jurasky's observations about Moran's mental state were similarly couched in terms relevant to Moran's competency to stand trial. He discusses Moran's ability to aid counsel and assist in his defense, but says nothing pertinent to Moran's capacity for a reasoned choice among alternatives.

## IV.

For the reasons stated above, we reverse the judgment of the district court. We remand to the district court with instructions to issue the writ within 60 days unless the state court allows Moran to withdraw his guilty pleas, enter new pleas, and proceed to trial with the assistance of counsel.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

assume that the state court found the facts necessary to support its ultimate legal conclusion "unless there is some indication that the state court applied an incorrect legal standard.") (citing *Townsend v. Sain*, 372 U.S. 293, 313–14, 83 S.Ct. 745, 757–58, 9 L.Ed.2d 770 (1963)), *cert. denied*, 479 U.S. 867, 107 S.Ct. 228, 93 L.Ed.2d 155 (1986). If the state court had applied the correct legal standard of competency, we could have inferred, for example, that the court made a finding that Moran's behavior was unimpaired as one factor supporting an ultimate legal conclusion that he was competent to waive his constitutional rights.

9. Indeed, Dr. O'Gorman's evaluation of Moran is phrased in terms that accord almost identical-

ly with the standard applied to determine competency to stand trial. Dr. O'Gorman's evaluation of Moran mirrors the standard set out by the Supreme Court in *Drope*, 420 U.S. at 171, 95 S.Ct. at 903, where the Court defined the constitutional standard for competency to stand trial as "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope* at 171, 95 S.Ct. at 903. Dr. O'Gorman's perception that Moran was "fully cognizant" of the penalties he faced is also relevant to Moran's competency to stand trial to the extent that it indicates that Moran understood the nature of the proceedings against him.