**Richard Allan MORAN, Petitioner–Appellant,**

v.

**E.K. McDANIEL, Warden, Respondent–Appellee.**

No. 96–99007.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 27, 1996.

Decided March 28, 1996.

Michael Pescetta, Federal Public Defender, Las Vegas, NV, for Richard Allan Moran.

David Sarnowski, Deputy Attorney General, Criminal Justice Division, Carson City, NV, for E.K. McDaniel.

Before: FARRIS, PREGERSON and THOMPSON, Circuit Judges.

## OPINION

DAVID R. THOMPSON, Circuit Judge.

### OVERVIEW

Richard Allan Moran has been sentenced to death. The Nevada Supreme Court dismissed, on state procedural grounds, his second state petition for post-conviction relief. The United States District Court for the District of Nevada then denied Moran's second federal habeas corpus petition and his application for a stay of execution. The district court denied the habeas petition on the grounds that federal review was barred by the state court's dismissal of Moran's federal constitutional claims on independent and adequate state grounds, and because Moran's petition was an abuse of the writ.

The district court issued a certificate of probable cause to permit Moran to appeal to this court. He has done so, and asks us to stay his execution now scheduled for 12:01 a.m. on March 30, 1996.

We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's denial of Moran's habeas corpus petition and deny his application for a stay of execution.

### I

### PROCEDURAL BACKGROUND

On August 2, 1984, Moran entered the Red Pearl Saloon and shot and killed the bartender and a patron. Moran then stole the cash register, the bartender's purse, and racks of money that he had seen the bartender place under a cupboard. He then set fire to the saloon in an attempt to burn it down. Sever-

al days later, he shot and killed his ex-wife. During this murder, Moran unsuccessfully attempted suicide.

Moran confessed to the murders while in the hospital, recovering from his suicide attempt. He was charged with two counts of murder with use of a deadly weapon for the saloon murders and, in a separate case, with one count of murder with use of a deadly weapon for the murder of his ex-wife. He also was charged with two counts of robbery with use of a deadly weapon and with first degree arson. The two cases were consolidated for all purposes before the state court.

After initially pleading not guilty, Moran discharged his counsel and pleaded guilty to all counts. A three-judge state court panel sentenced Moran to death for each of the murders. The Nevada Supreme Court affirmed the death sentence for the saloon murders, but vacated the death sentence for the murder of Moran's ex-wife, and remanded with directions to impose a life sentence without the possibility of parole. *Moran v. State,* 103 Nev. 138, 734 P.2d 712 (1987).

After unsuccessfully seeking post-conviction relief from the Nevada state courts, Moran filed his first federal petition for habeas corpus relief in the United States District Court for the District of Nevada. The district court denied Moran's petition.

Moran then filed an appeal to this court. In his opening brief, Moran raised the following arguments: (1) his plea and waiver of counsel were not freely and voluntarily entered because he was heavily medicated at the time of his guilty plea, (2) he received ineffective assistance of counsel because his counsel failed to investigate or raise any defenses, (3) the evidence did not support the aggravating circumstances found, (4) the sentencing panel violated Moran's due process rights by refusing to find his intoxicated state constituted a mitigating circumstance, and (5) the sentencing panel violated his due process rights by consolidating the two actions at the penalty hearing.

We reversed the district court's denial of Moran's petition for habeas corpus. We concluded the state trial court deprived Moran of his due process rights by failing to hold a hearing to determine his competency to waive his constitutional rights to counsel, to compulsory process, to confront witnesses, to a public trial, to a jury of his peers, and his privilege against self-incrimination. *Moran v. Godinez,* 972 F.2d 263, 265 (9th Cir.1992). We determined that this error was not cured by a post-conviction hearing because the state court applied the wrong standard to evaluate Moran's competency. *Id.* at 265–66. We held: "Competency to waive constitutional rights requires a higher level of mental functioning than that required to stand trial." *Id.* at 266. Because we reversed the district court on this ground, we decided we would not "reach the other issues raised by Moran on appeal." *Id.* at 264 n. 2.

The Supreme Court granted certiorari and reversed. *Godinez v. Moran,* 509 U.S. 389, 401–03, 113 S.Ct. 2680, 2688, 125 L.Ed.2d 321 (1993). The Supreme Court held that the standards are the same to determine competency to stand trial and competency to waive counsel and plead guilty. *Id.* at 397–99, 113 S.Ct. at 2686. The Court also stated a defendant must not only be competent to waive his or her rights, but such waiver must be knowing and voluntary. *Id.* at 399–401, 113 S.Ct. at 2687. The Court remanded the case to us for further proceedings.

The parties submitted further briefing in light of the Supreme Court's remand. In Moran's subsequent briefing, he asserted only two arguments: (1) he was not mentally competent to waive his rights and his waiver was not voluntary, and (2) his trial counsel was ineffective by failing to investigate and research all possible defenses.

After reexamining the issues in light of the Supreme Court's decision, we concluded that the post-conviction hearing addressing Moran's competency had cured the due process violation and that his waiver was knowing and voluntary. *Moran v. Godinez,* 57 F.3d 690, 698–99 (9th Cir.1994). We also addressed and rejected Moran's ineffective assistance of counsel claim. We concluded Moran's counsel was not ineffective by failing "to investigate whether he was competent to plead guilty, waive counsel, and forego the presentation of mitigating evidence" and by failing to investigate and research all possible

defenses. *Id.* at 699–700. Judge Pregerson dissented and filed a dissenting opinion. Neither in the majority opinion nor the dissent did we address the other arguments that Moran had presented in his initial brief to this court in his appeal from the district court's denial of his first habeas petition.

On December 30, 1994, Moran filed a petition for rehearing and a suggestion for rehearing en banc. In this petition, he did not allege that we had failed to resolve any claims raised in his initial federal habeas corpus petition. Moran's petition for rehearing was denied. A judge of this court called for rehearing en banc, but that call failed to receive a majority of the votes of the active judges of the court. As a result, the suggestion for rehearing en banc was rejected.

Moran then filed a petition for certiorari with the Supreme Court. The Court denied certiorari in November 1995. In December 1995, Moran filed a second petition for post-conviction relief in the Nevada state trial court. In February 1996, the state trial court denied this petition. Moran's request for reconsideration was also denied, and the state trial court scheduled his execution for the week of March 25, 1996. The warden of the institution in which Moran is incarcerated set Moran's execution for 12:01 a.m. on March 30, 1996.

On March 7, 1996, Moran appealed the state trial court's denial of his petition for post-conviction relief to the Nevada Supreme Court. He then filed a second petition for habeas corpus relief in the United States District Court for the District of Nevada. The district court continued the hearing on Moran's federal petition to allow the Nevada Supreme Court an opportunity to address Moran's arguments presented to that court.[1]

While Moran's petitions were pending before the Nevada Supreme Court and the district court, Moran filed in this court a motion to recall our mandate which issued following the filing of our opinion on November 15, 1994, and amended on June 2, 1995. *Moran v. Godinez,* 57 F.3d 690 (9th Cir. 1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995). Moran also requested a stay of execution. For the reasons set forth below, we deny Moran's motion to recall the mandate and his request for a stay of execution.

On March 21, 1996, the Nevada Supreme Court affirmed the state trial court's dismissal of Moran's second post-conviction petition. The Nevada Supreme Court concluded that all of Moran's claims were procedurally barred under state law as untimely.

On March 22, 1996, the United States District Court for the District of Nevada heard oral argument on Moran's second federal habeas petition and his request for a stay of execution. On the same day, the district court determined that federal review was precluded because the Nevada Supreme Court's dismissal rested on adequate and independent state procedural grounds and because Moran's federal habeas petition was an abuse of the writ. Moran then filed a notice of appeal to this court and a motion for a stay of his execution. On March 27, 1996 we heard oral argument on the motion to recall the mandate and on the motion for a stay of execution.

---

1. In his second federal petition, Moran contends: (1) his guilty plea was invalid because the sentencing panel allegedly found him guilty of only second degree murder; (2) the use of the three-judge sentencing panel to determine his sentence was unconstitutional; (3) the random and apparently motiveless aggravating factor is unconstitutionally vague, shifts the burden of proof to Moran, provides no rational basis for imposing the death penalty, and violated his right against self-incrimination; (4) the facts do not support a finding of the aggravating factor of presenting a danger of death to others; (5) the sentencing panel failed to find Moran's state of intoxication to be a mitigating circumstance; (6) his appellate counsel's failure to raise claims one through five constitutes ineffective assistance of appellate counsel; (7) the Nevada Supreme Court failed to conduct an adequate review because it did not consider his intoxication as a mitigating circumstance, did not address the alleged unconstitutionality of the three-judge sentencing panel, and did not consider the sentencing panel's alleged failure to find Moran guilty of first degree murder; (8) the absence of articulable standards under which the Nevada Supreme Court reviews death sentences renders its review unconstitutional; and (9) the death penalty constitutes cruel and unusual punishment.

## II

## DISCUSSION

### A. Motion to Recall the Mandate

■ Moran requests we recall our mandate in Case No. 91–15609, *Moran v. Godinez,* 57 F.3d 690 (9th Cir.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995).

After the Supreme Court remanded that case to this court, we issued our opinion on November 15, 1994, and amended the opinion on June 2, 1995, with Judge Pregerson dissenting. Moran contends that in this opinion we failed to address some of the claims he raised in his original habeas appeal. Because Moran has failed to demonstrate good cause for failing to raise, in his previously filed petition for rehearing, the contentions he now makes in his motion to recall the mandate, we deny the motion.

Federal Rule of Appellate Procedure 40(a) permits a party to file a petition for rehearing within fourteen days after the entry of judgment to bring to the court's attention any point of law or fact the party contends the court overlooked in deciding the case. Fed.R.App. 40(a). Moran filed a petition for rehearing, together with a suggestion for rehearing en banc, on December 30, 1995. His petition was timely filed but he did not include in it the contentions he now makes in his motion to recall the mandate. Now, when a further petition for rehearing would be time-barred and his execution has been scheduled, he asserts in his motion to recall the mandate contentions that could have and should have been made in a timely-filed petition for rehearing, if the contentions had any merit.

"[T]he recall power [to recall the court's mandate] may not be used simply as a device for granting late rehearing. . . ." *Johnson v. Bechtel Assocs.,* 801 F.2d 412, 416 (D.C.Cir. 1986). Moran states only that his failure to raise this issue earlier was an "oversight." This assertion is not good cause to excuse his failure to include in his earlier-filed petition for rehearing the contentions he now makes in his motion to recall the mandate.

Moran's reliance on *Patterson v. Crabb,* 904 F.2d 1179 (7th Cir.1990) is misplaced. In *Patterson,* the Seventh Circuit dismissed the appellant's appeal because the court erroneously thought the district court had not entered a final judgment. When the court discovered the district court had entered a final judgment, the court recalled its mandate to permit the appeal to be heard. The court pointed out that the appellant should have brought the error to the court's attention by a timely-filed petition for rehearing, but excused his failure to do so because at the time the appellant should have filed a petition for rehearing he was pursuing an administrative remedy. *Id.* at 1180.

Because Moran has not demonstrated good cause and has waited until this late date to file his motion to recall the mandate, he has waived review of these claims. *Cf. Moreau v. FERC,* 982 F.2d 556, 563 (D.C.Cir.1993) (concluding parties filing untimely petition for rehearing waived claims by "sit[ting] on the sidelines to wait and see what happens").

Even if we were to consider what Moran alleges to be his unreviewed claims, we would deny them. His unreviewed claims are clearly meritless.

■ His first "unreviewed" claim is that there is no factual support for the two aggravating factors found by the three-judge state sentencing panel. This is incorrect. Moran's confessions provide ample support for the finding that the saloon murders were random and without an apparent motive. Moran stated that he did not know the bartender or the patron and that he did not know why he killed them. The record also supports the finding of the second aggravating factor, that the murders created a great risk of death to more than one person. During the murders, Moran placed his companion, Tammy Cortez, in danger. Cortez accompanied Moran to the saloon and was present when Moran shot the bartender and the patron numerous times. Cortez was in close proximity to Moran during the murders, and, at one point, Moran had to reach around her in order to shoot the patron. Cortez stated she was in fear for her life.

■ Moran's next "unreviewed" claim is that the sentencing panel violated his constitutional rights by failing to consider mitigating evidence of his intoxicated state. Moran misrepresents the record. The sentencing panel did consider his evidence of intoxication. The sentencing panel, however, did not find this evidence to be a mitigating factor in this particular case.[2] The sentencing panel was not required to find all evidence submitted by Moran to be mitigating factors so long as the sentencing panel considered the evidence. *Cf. Jeffers v. Lewis,* 38 F.3d 411, 418 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).

■ Moran's third "unreviewed" claim is that the sentencing panel violated his constitutional rights by conducting a "penalty hearing on two offenses at different times and places." Moran does not have a due process right to separate hearings and Moran has not demonstrated that the state court's consolidation of his sentencing hearings otherwise violated his due process rights.

In sum, Moran's alleged unreviewed claims are meritless.

**B. Standard of Review—The Present Habeas Petition**

■ We review de novo the district court's decision whether to grant or deny a petition for habeas corpus. *Calderon v. Prunty,* 59 F.3d 1005, 1008 (9th Cir.1995). We review for clear error any factual findings made by the district court relevant to its determination. *Bonin v. Calderon,* 59 F.3d 815, 823 (9th Cir.1995) (*Bonin* II), *cert. denied,* —— U.S. ——, 116 S.Ct. 718, 133 L.Ed.2d 671 (1996). Further, we accord a presumption of correctness to factual findings made by the state court. 28 U.S.C. § 2254(d); *Melugin v. Hames,* 38 F.3d 1478, 1482 (9th Cir.1994). We also "accept a state court ruling on questions of state law." *Id.* Finally, we "may affirm on any ground supported by the record, even if it differs from the rationale of the district court." *Bonin* II, 59 F.3d at 823.

**C. The District Court's Certificate of Probable Cause**

■ Moran first argues we are required to grant a stay of execution because the district court issued a certificate of probable cause. By issuing the certificate, Moran argues, the district court implicitly determined that a stay was justified. We disagree.

First of all, the district court denied Moran's request for a stay of execution. Moreover, "[a] stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are 'substantial grounds upon which relief might be granted.'" *Delo v. Stokes,* 495 U.S. 320, 321, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 895, 103 S.Ct. 3383, 3395–96, 77 L.Ed.2d 1090 (1983)). Substantial grounds are not present if the successive petition constitutes an abuse of the writ. *Delo,* 495 U.S. at 321, 110 S.Ct. at 1881. Moran's present petition, which is his second federal petition for habeas corpus, is an abuse of the writ. Moreover, the claims he asserts are barred by the Nevada Supreme Court's dismissal of his petition on adequate and independent state grounds. As we explain below, Moran has not demonstrated cause for waiting until now to raise the claims he asserts in his abusive petition, and he has not established by clear and convincing evidence that he is actually innocent of the death penalty. Accordingly, a stay of execution is not warranted.

**D. Bars to Review of the Merits**

**1. Procedural Bar**

The Nevada Supreme Court determined that Moran's second petition was untimely under Nev.Rev.Stat. § 34.726. Under this section, a petition is untimely if filed later than one year after the entry of the judgment of conviction unless good cause is shown. To demonstrate good cause, Moran

---

**2.** Specifically, the sentencing panel stated:
 Defendant states he was under the influence of "lotsa drugs." The [sentencing panel] do[es]

 not, however, find this to be a mitigating circumstance in this case.

must show that the delay is not his fault. Nev.Rev.Stat. § 34.726(1)(a).

The Nevada Supreme Court also determined dismissal was appropriate under Nev. Rev.Stat. § 34.800. Under this section, dismissal is warranted if a delay in the filing of a petition prejudices the State's ability to respond to the petition, unless Moran "shows that the petition is based upon grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred...." Nev.Rev.Stat. § 34.800(1)(a). Dismissal also is warranted if the delay prejudices the State's ability to retry Moran, unless Moran "demonstrates that a fundamental miscarriage of justice has occurred in the proceedings resulting in the judgment of conviction or sentence." Nev.Rev.Stat. § 34.800(1)(b). If the petition is filed after five years from the affirmance of the conviction and sentence, a rebuttable presumption of prejudice to the State arises. Nev.Rev. Stat. § 34.800(2).

The Nevada Supreme Court determined that Moran's second petition was filed more than seven years after the affirmance of his conviction and that Moran had failed to demonstrate the delay was not his fault or a lack of prejudice to the State. Consequently, the Nevada Supreme Court held Moran's "entire petition is properly procedurally barred."

 If Nevada's procedural bar of Moran's federal constitutional claims is based upon independent and adequate state grounds, we are precluded from reviewing these claims unless Moran can establish cause and prejudice for his default, or a miscarriage of justice. *Noltie v. Peterson*, 9 F.3d 802, 804–05 (9th Cir.1993). "[T]he independent state grounds doctrine bars the federal courts from reconsidering the issue in the context of habeas corpus review as long as the state court explicitly invokes a state procedural bar rule as a separate basis for its decision." *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir.1995). To preclude federal review, the state court must clearly state that its decision rests on independent and adequate state grounds. *Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir.1994), *cert.*

*denied,* —— U.S. ——, 115 S.Ct. 1175, 130 L.Ed.2d 1127 (1995).

 In the present case, the Nevada Supreme Court clearly stated that its dismissal of Moran's appeal was based on procedural grounds. Although the Nevada Supreme Court discussed the merits of Moran's claims, the court clearly stated that "any discussion of the merits of any of [Moran's] claims in this case is strictly for the purpose of demonstrating that [Moran] cannot overcome his procedural defaults by a showing of cause and prejudice." We conclude, therefore, that the Nevada Supreme Court clearly rested its dismissal of Moran's petition on independent state procedural grounds.

 Moran argues, however, that the Nevada Supreme Court's procedural bar rules are not adequate because that court does not consistently apply them. To be adequate, a state's procedural rule must be consistently applied. *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994).

 We reject Moran's argument. The Nevada Supreme Court has consistently applied the state rule which prohibits review of the merits of an untimely claim unless the petitioner demonstrates cause. *See, e.g., Birges v. State*, 107 Nev. 809, 820 P.2d 764, 765–66 (1991); *Glauner v. State*, 107 Nev. 482, 813 P.2d 1001, 1003 (1991); *Colley v. State*, 105 Nev. 235, 773 P.2d 1229, 1230 (1989). Even before the Nevada State Legislature adopted the procedural rules which bar Moran's claims in state court, the Nevada Supreme Court dismissed petitions without reviewing the merits if the delay was unreasonable and prejudicial. *Groesbeck v. State*, 100 Nev. 259, 679 P.2d 1268, 1269 (1984).

In one case, the Nevada Supreme Court found the untimely filing of the petition to be a bar to review of the merits, but briefly noted the record did not support the petitioner's claim of ineffective assistance of counsel. *Hood v. State*, 111 Nev. 335, 890 P.2d 797, 798 (1995). This brief reference to the record does not establish that the Nevada Supreme Court inconsistently applies that state's procedural bar rule.

In only one other case did the Nevada Supreme Court address the merits of a defaulted claim. *Bennett v. State,* 111 Nev. 1099, 901 P.2d 676, 679 (1995). There, however, the merits were "intricately related" to the claim of prejudice. Moreover, the consistent application rule requires application of the procedural rule only in the vast majority of cases. *Dugger v. Adams,* 489 U.S. 401, 411 n. 6, 109 S.Ct. 1211, 1218 n. 6, 103 L.Ed.2d 435 (1989).

Other cases cited by Moran in an attempt to show the Nevada Supreme Court does not consistently apply the state's procedural bar rules are not relevant. These cases do not discuss the procedural rule which bars review of the merits of claims raised in an untimely petition. *Ford v. Warden,* 111 Nev. 872, 901 P.2d 123 (1995), *cert. denied,* ― U.S. ――, 116 S.Ct. 950, 133 L.Ed.2d 874 (1996); *Paine v. State,* 110 Nev. 609, 877 P.2d 1025 (1994), *cert. denied,* ― U.S. ――, 115 S.Ct. 1405, 131 L.Ed.2d 291 (1995); *Bejarano v. State,* 106 Nev. 840, 801 P.2d 1388 (1990); *Krewson v. Warden,* 96 Nev. 886, 620 P.2d 859 (1980); *Gunter v. State,* 95 Nev. 319, 594 P.2d 708 (1979); *Warden v. Lischko,* 90 Nev. 221, 523 P.2d 6 (1974).

Finally, our decision in *McKenna v. McDaniel,* 65 F.3d 1483 (9th Cir.1995), is distinguishable from the present appeal. *McKenna* involved defense counsel's failure to object to a constitutionally vague jury instruction on depravity as an aggravating circumstance. We held the Nevada courts had not consistently treated the failure to object to constitutional error in an instruction as a procedural bar to review of a constitutional claim in a death penalty case. *Id.* at 1488–89. We concluded the state court's dismissal of the petition was not based on an adequate state procedural rule. *Id.* at 1489.

. We conclude that the Nevada Supreme Court consistently applies its procedural rules to bar review of the merits of an untimely claim in the absence of a showing of cause and lack of prejudice to the State. Our review of the merits of Moran's claims, therefore, is precluded unless Moran can establish cause and prejudice or that a miscarriage of justice would result in the absence of our review. *Sawyer v. Whitley,* 505 U.S. 333, 338–39, 112 S.Ct. 2514, 2518–19, 120 L.Ed.2d 269 (1992); *Jeffers v. Lewis,* 68 F.3d 299, 300 (9th Cir.), *cert. denied,* ― U.S. ――, 116 S.Ct. 36, 132 L.Ed.2d 917 (1995).

### 2. Abuse of the Writ

██ Before analyzing whether Moran can demonstrate cause or a miscarriage of justice to avoid Nevada's procedural bar, we address whether Moran's second petition is an abuse of the writ. We do this because, if the petition is an abuse of the writ, Moran may obtain federal review of the merits of his claims only if he can demonstrate cause and prejudice or a miscarriage of justice. The analysis of cause and prejudice, and the analysis of a miscarriage of justice, is the same whether the proposed bar to review is procedural or an abuse of the writ. *Bonin v. Calderon,* 77 F.3d 1155, 1159 (9th Cir.1996) (*Bonin* III), *cert. denied,* ― U.S. ――, 116 S.Ct. 980, 133 L.Ed.2d 899 (Feb. 23, 1996).

██ Moran has abused the writ if he raises any new claims in his subsequent petition that could have been raised in his first petition. *McCleskey v. Zant,* 499 U.S. 467, 489, 111 S.Ct. 1454, 1467, 113 L.Ed.2d 517 (1991). Under *McCleskey,* the State must specify the claim that appears for the first time in a subsequent petition. *Id.* at 494, 111 S.Ct. at 1470. If the State satisfies this burden, Moran must demonstrate "cause" and "prejudice" for failing to raise the new claim in his first petition. *Id.*

██ We conclude the claims raised in Moran's present, second petition constitute an abuse of the writ. The State has sufficiently identified the claims raised for the first time in this second petition. Moran could have brought all the claims he now raises either during direct appeal or in his first habeas corpus petition. Therefore, federal review of the merits of Moran's claims is barred by the abuse of the writ doctrine, unless Moran can demonstrate cause for failing to assert the claims in his first petition, or can establish a miscarriage of justice.

### 3. Cause

██ To demonstrate cause, Moran must show "some objective factor external to the

defense impeded counsel's efforts to raise the claim in the state court." *McCleskey*, 499 U.S. at 493, 111 S.Ct. at 1470. Ineffective assistance of counsel may constitute cause, if the representation amounts to an independent Sixth Amendment violation. *Bonin v. Vasquez*, 999 F.2d 425, 428 (9th Cir.1993) (*Bonin* I).

■■ Moran argues he has demonstrated cause because he has received ineffective assistance of appellate counsel. In our previous opinion, we rejected Moran's claim that his trial counsel provided ineffective assistance. *Moran*, 57 F.3d at 699–700. In this second petition, Moran asserts he had the same counsel for his direct and initial state and federal post-conviction petitions. Therefore, he argues, a conflict of interest existed which precluded his counsel from asserting his own ineffectiveness on direct appeal in his first post-conviction petition.

We have previously considered and rejected this argument. *Bonin* III, 77 F.3d at 1159. We have concluded there is no Sixth Amendment right to effective assistance of counsel during state or federal habeas corpus proceedings. *Bonin* I, 999 F.2d at 428. Moran may not avoid this rule by asserting this habeas proceeding was the first proceeding in which he could have raised his claim of ineffective assistance of appellate counsel. *Bonin* III, 77 F.3d at 1159.

Moran also argues that cause exists because his counsel's alleged conflict of interest violated his due process rights. He contends he was deprived of notice of his counsel's conflict of interest.

■■ In essence, Moran is arguing that he was deprived of effective assistance of counsel during his habeas proceedings because his counsel was not able to litigate his own alleged ineffectiveness. A petitioner is entitled to due process during the habeas proceedings. *Bonin* I, 999 F.2d at 428–29. However, "the absence or ineffectiveness of counsel does not in and of itself constitute a due process violation." *Id.* at 429. Moran

may not avoid our holding that a petitioner is not entitled to effective assistance of counsel during habeas proceedings by alleging a due process, rather than a Sixth Amendment, violation. *Id.* Accordingly, we reject this argument.

### 4. Miscarriage of Justice

■■ Moran may escape the bar to federal review by demonstrating the preclusion of federal review would result in a miscarriage of justice. To satisfy this standard, Moran must demonstrate he is "actually innocent" of the death penalty. *Sawyer*, 505 U.S. at 339–40, 112 S.Ct. at 2519. This requires Moran to "show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found [him] eligible for the death penalty under the applicable state law." [3] *Id.* at 336, 112 S.Ct. at 2517. This exception is narrow and is reserved for the extraordinary case. *Id.* at 340, 112 S.Ct. at 2519; *Dugger*, 489 U.S. at 412 n. 6, 109 S.Ct. at 1218 n. 6.

■■ Moran argues he is actually innocent of first degree felony murder because the aggravating factors found by the sentencing panel indicate he is guilty only of second degree murder and, thus, ineligible for the death penalty. Specifically, the sentencing panel found Moran had randomly and without apparent motive killed the two people in the saloon. The sentencing panel did not find, as an aggravating factor, that Moran had committed the murders during the perpetration of a robbery. Consequently, Moran argues he is not eligible for the death penalty under a theory of felony murder.

In its decision dismissing Moran's second habeas petition, from which this appeal is taken, the district court rejected this argument because it determined Moran had pleaded guilty to premeditated first degree murder for the saloon murders. This was incorrect. While the factual basis for Moran's guilty plea for the murder of his ex-wife was on the basis of premeditation, Moran did not receive a death sentence for that murder.

**3.** Moran incorrectly asserts that we should apply the more lenient standard established in *Schlup v. Delo*, —— U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Moran challenges only his eligibility for the sentence of death and does not allege that he is actually innocent of the murders. Thus, the more lenient standard does not apply. *Id.* at ——, 115 S.Ct. at 865–66.

The factual basis for the guilty pleas to the saloon murders, for which Moran received his death sentence, was limited to his plea to first degree felony murder.

Nevertheless, we conclude that Moran has not demonstrated by clear and convincing evidence that he is not eligible for the death penalty. Simply because the sentencing panel did not find, as an aggravating factor, that the murders were committed during the perpetration of a robbery, does not mean that the sentencing panel found Moran did not commit the murders during the perpetration of the robbery or that Moran was not otherwise guilty of first degree felony murder. As correctly noted by the Nevada Supreme Court, the issue of guilt was not before the sentencing panel and the sentencing panel was not obliged to find the existence of all conceivable aggravating factors. Further, Moran pled guilty to two counts of robbery and has not challenged the plea.

Also, a finding that the killings were random and without apparent motive is not inconsistent with a finding that the murders were committed during perpetration of the robbery. Moran's motive in killing the bartender and patron did not need to be to facilitate the robbery. The key analysis is whether the murders occurred during the perpetration of the robbery.

The record supports a finding that the murders were committed during the perpetration of the robbery. The information charged Moran with murder, but did not specify whether the murder was first or second degree. During the change-of-plea hearing, the state trial court explained to Moran the elements and definition of murder. The state trial court also explained under what circumstances Moran would be guilty of first degree murder. The state trial court specifically explained that first degree murder includes killings which are "committed in the perpetration or attempted perpetration of a ... robbery."[4] The state trial court also asked Moran whether "with malice aforethought willfully and feloniously [he] kill[ed]" the patron, and Moran stated, "Yes." Moran then answered the court's question:

Q: And did you do that at the time of the perpetration of a robbery?

A: Yes.

The state trial court then asked Moran whether he had "with malice aforethought willfully and feloniously kill[ed]" the bartender, and Moran answered, "Yes." Moran answered the next question:

Q: And did you do that during the perpetration of that robbery?

A: Yes.

By Moran's own admissions during his change of plea hearing, he admitted to committing the murders during the perpetration of the robbery, and he admitted this after the court had explained to him this would make the murders first degree murder.

That Moran formed the intent to rob before committing the murders is also supported by the record. During his confession in the hospital, he said he had been in the saloon about an hour and a half. He said the patron he eventually shot was talking to a "fat girl" in the saloon. At some point, the "fat girl" left the saloon with the patron, and the patron returned alone about five minutes later. When Moran was asked when he "develop[ed] the intention of robbing the place," he answered, "Well, it was after that fat girl left."

Further, the record indicates Moran had a severe drug addiction and was unemployed at the time of the robbery. Moran also stated in his confession that he paid attention to where the bartender was placing racks of money and, after the killings, he took this money. Finally, in response to the question, "Once you shot the bartender and the guy, then what did you do," Moran answered, "Then I started robbing everything I could rob." All this evidence supports a finding that Moran formed the intent to rob prior to committing the murders.

■ In addition to arguing that he is not eligible for the death penalty because he was not properly convicted on his guilty plea to first degree felony murder, Moran challenges the two aggravating factors found by the

---

**4.** Under Nev.Rev.Stat. § 200.030(1)(b), murder in the first degree includes "murder which is ... committed in the perpetration or attempted perpetration of ... robbery...."

three-judge state sentencing panel. Because Nevada is a "weighing" state, in considering these challenges, we must determine whether Moran has shown by clear and convincing evidence that no reasonable sentencer would have found him eligible for the death sentence. *Deutscher v. Whitley,* 991 F.2d 605, 608 (9th Cir.1993). This is a "sharply limit[ed] inquiry." *Id.* at 607.

Moran argues he is ineligible for the death sentence because the random and apparently motiveless killing aggravating factor is unconstitutionally vague, shifts the burden of proof to him, provides no rational basis for imposing the death penalty, and violates his right against self-incrimination. Even assuming this aggravating factor is unconstitutional, a question we do not decide, Moran has not satisfied the stringent clear and convincing evidence standard.

The sentencing panel found the existence of two aggravating factors: (1) the murders were at random and without apparent motive, and (2) Moran placed another person in danger of death during the murders. The sentencing panel found the following mitigating factors: (1) Moran had no significant criminal history, and (2) Moran exhibited remorse for the saloon murders.

Our review is not whether, in balancing these factors, we would find a death sentence to be warranted. Instead, we must determine in this second habeas petition whether Moran has demonstrated, by clear and convincing evidence, that no reasonable sentencer would impose the death sentence. This we cannot do. One aggravating factor is still valid and the balance does not tip so sharply in favor of mitigation that we clearly could hold that a reasonable sentencer would not impose the death sentence. Were this Moran's first petition, this stringent standard would not apply. *Id.* at 608. Here it does. *Id.*

We reject Moran's argument that he is actually innocent of the death penalty.

Moran's motion to recall the mandate and to stay his execution, which motion was filed in Case No. 91–15609, and his motion to stay his execution in connection with this present appeal, Case No. 96–99007, are DENIED.

PREGERSON, *Circuit Judge, concurring* separately.

Given the present state of the case law and the procedural posture of this case, it appears that there is an absence of any legally viable ground on which to base a stay.