**William MACH, Petitioner–Appellant,**

v.

**Terry STEWART; Grant Woods, Attorney General, Respondents–Appellees.**

No. 96–16519.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 1997.

Decided Nov. 10, 1997.

William Mach, (argued) Yuma, Arizona, Pro Se, Jim D. Himelic, Tucson, Arizona, for petitioner-appellant.

Paul McMurdie, Assistant Attorney General, Phoenix, Arizona, for respondents-appellees.

Before: FLETCHER, BOOCHEVER, and REINHARDT, Circuit Judges.

BOOCHEVER, Circuit Judge:

■ William C. Mach (Mach) was convicted in Arizona state court of sexual conduct with a minor under age 14. After the Arizona Court of Appeals affirmed his conviction and the Arizona Supreme Court denied his petition for review, Mach petitioned for habeas corpus in the United States District Court.[1] His petition was denied. On appeal from that denial, Mach contends that he was tried by a biased and tainted jury and that his trial violated due process because the court permitted last-minute introduction of prior bad acts.[2] The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 2253, and we reverse.

## STATEMENT OF FACTS

Mach was charged with sexual conduct with a minor under 14 years of age. The victim was an eight-year-old girl who claimed that while she was at Mach's home visiting his daughter, he had performed an act of oral sex on her.

The first prospective juror to be questioned during voir dire was Ms. Bodkin, a social worker with the State of Arizona Child Protective Services. Bodkin stated that she would have a difficult time being impartial given her line of work, and that sexual assault had been confirmed in every case in which one of her clients reported such an

---

1. The Antiterrorism and Effective Death Penalty Act of 1996 does not affect Mach's case because his petition was filed before the act became law. *Lindh v. Murphy,* — U.S. —, —, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997).

2. Mach also argues that the trial court's limitations on his cross-examination of an expert wit-

ness violated the Confrontation Clause. Because we reverse the district court's dismissal of his habeas petition due to the structural error of a tainted jury, we do not address this issue. Similarly, we do not consider the question Mach raises regarding the propriety of the admission of the evidence of prior touching.

assault. The court continued to question Bodkin on this subject before the entire venire panel. The judge's questions elicited at least three more statements from Bodkin that she had never, in three years in her position, become aware of a case in which a child had lied about being sexually assaulted. The court warned Bodkin and the venire panel as a whole that "the reason we have trials is to determine whether or not a person is guilty of the charges made against him, and you do that by seeing what the state has to give you by way of evidence and you apply that to whatever you find to be the facts. You listen to the arguments of counsel." The judge went on to ask Bodkin whether she thought she could do that, to which she responded that she would try, and that she "probably" could. [RT Tab B at 23–27]

Later the court questioned the panel regarding psychology experience:

> THE COURT: ... Are any of you—are any of you in psychology or have you ever been in psychology? I mean psychologist or clinical psychologist or psychiatrist? Anybody here have any background in psychology?
>
> . . . .
>
> MS. BODKIN: I've taken psychology courses and worked extensively with psychologists and psychiatrists.
>
> THE COURT: Have you had any courses in child psychology?
>
> MS. BODKIN: Yes.
>
> THE COURT: Thank you, Miss Bodkin.

Transcript of Proceedings, Trial Day One, at 30.

The court struck three jurors for cause—jurors who indicated that they had been victims of, or close to victims of, a sexual crime. Mach then moved for a mistrial, arguing that the entire panel had been tainted by the exchange between the court and venireperson Bodkin. The court denied the motion, but struck Bodkin for cause. Mach renewed his motion for mistrial, again arguing that the problem was less Bodkin herself and more the effect her statements had on the other panel members, but again the court denied the motion.

A jury found Mach guilty, and the Arizona Court of Appeals affirmed his conviction. The Arizona Supreme Court denied his petition for review. Mach filed a petition for writ of habeas corpus in the United States District Court, which the district court denied. Mach now appeals to this court.

## ANALYSIS

■■■ The district court's decision to grant or deny a section 2254 habeas petition is reviewed de novo. *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1305 (9th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 588, 136 L.Ed.2d 517 (1996). Findings of fact made by the district court relevant to its decision are reviewed for clear error. *Moran v. McDaniel,* 80 F.3d 1261, 1268 (9th Cir.1996). When "reviewing a state court determination in a habeas corpus proceeding," this court generally asks "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *California v. Roy,* —— U.S. ——, ——, 117 S.Ct. 337, 338, 136 L.Ed.2d 266 (1996) (per curiam) (quotation omitted). However, that standard does not apply to "structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards." *Id.* "The existence of such defects-deprivation of the right to counsel, for example-requires automatic reversal of the conviction because they infect the entire trial process." *Brecht v. Abrahamson,* 507 U.S. 619, 629–30, 113 S.Ct. 1710, 1717–18, 123 L.Ed.2d 353 (1993).

Mach contended at trial and continues to contend that the exchange between the trial court judge and potential juror Bodkin impermissibly tainted the jury pool to the extent that the court should have granted a mistrial. He suggests that this failure to grant a mistrial caused structural error that can be remedied only by a reversal of his conviction.

During voir dire, the trial judge elicited from Bodkin (a) that she had a certain amount of expertise in this area (she had taken child psychology courses and worked with psychologists and psychiatrists; she worked with children as a social worker for

the state for at least three years); and (b) four separate statements that she had *never* been involved in a case in which a child accused an adult of sexual abuse where that child's statements had not been borne out. While the court did warn Bodkin and the general pool that jurors are to make determinations based on the evidence rather than on their own experiences or feelings, it went on to elicit yet another statement from Bodkin that she had never known a child to lie about sexual abuse. The court asked the other jurors whether anyone disagreed with her statement, and no one responded.

■ The Sixth Amendment right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). "Even if 'only one juror is unduly biased or prejudiced,' the defendant is denied his constitutional right to an impartial jury." *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979); *see also United States v. Allsup*, 566 F.2d 68, 71 (9th Cir.1977). Due process requires that the defendant be tried by a jury capable and willing to decide the case solely on the evidence before it. *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

■ At a minimum, when Mach moved for a mistrial, the court should have conducted further voir dire to determine whether the panel had in fact been infected by Bodkin's expert-like statements. Given the nature of Bodkin's statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated, we presume that at least one juror was tainted and entered into jury deliberations with the conviction that children simply never lie about being sexually abused. This bias violated Mach's right to an impartial jury.[3]

■ This error precludes analysis under a "harmless-error" standard and rises to the level of structural error. While trial error occurs during the presentation of the case to the jury and thus can be "assessed in the context of other evidence presented," *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991), structural errors "infect the entire trial process." *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993); *Thompson v. Borg*, 74 F.3d 1571, 1574 (9th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 227, 136 L.Ed.2d 159 (1996). The error in this case, the jury's exposure during voir dire to an intrinsically prejudicial statement made four times by a children's social worker, occurred before the trial had begun and severely infected the process from the very beginning. Such error is impossible to "assess[ ] in the context of" evidence presented at trial because all the evidence was presented to an already tainted jury. *See United States v. Annigoni*, 96 F.3d 1132, 1144 (9th Cir.1996) (en banc) (finding erroneous denial of right of peremptory challenge "not amenable to harmless-error analysis" and requiring reversal, although not deciding if such error constitutes structural error). The error thus amounts to a structural error requiring reversal of Mach's conviction.

Our holding is consistent with both *Jeffries v. Wood*, 114 F.3d 1484, 1491–92 (9th Cir. 1997) (en banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 586, —— L.Ed.2d —— (1997) and *Thompson v. Borg*. *Jeffries* applied a "harmless-error" standard to jury misconduct that occurred *during* the guilt and sentencing phase and that could be weighed in context of the other evidence presented. 114 F.3d at 1491–92. *Thompson* applied a "harmless-error" standard when a veniremember stated during voir dire that he had read in a newspaper that the defendant had "pleaded guilty at one time and changed it." 74 F.3d at 1573. The *Thompson* court, however, observed that the remark was "vague and awkwardly phrased," *id.* at 1576, that it was elicited by defense counsel, and, most impor-

---

**3.** Furthermore, Mach's inability to confront and cross-examine Bodkin implicates the Sixth Amendment's Confrontation Clause. *Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 586, —— L.Ed.2d

—— (1997) ("When a juror communicates objective extrinsic facts regarding the defendant or the alleged crimes to other jurors, the juror becomes an unsworn witness within the meaning of the Confrontation Clause.").

tant, that the error resembled the admission of an involuntary confession, which has been classified as trial error. *Id.* at 1574. In this case the repeated pre-trial exposure of the jurors to unequivocal and highly prejudicial statements precluded the seating of a fair and impartial jury. Thus, like deprivation of the right to counsel or a biased judge, this error was of the sort that infected the trial as a whole.

## CONCLUSION

Because the jury was tainted in violation of Mach's sixth amendment right to an unbiased jury, and because that taint caused a structural error in the trial as a whole, we REVERSE the district court's dismissal of Mach's petition for writ of habeas corpus and REMAND for issuance of the writ directed to the state to vacate the conviction and to release Mach unless he is retried within a reasonable period of time.