**Donald Ray WELLS, Petitioner–Appellant,**

v.

**Manfred MAASS, Superintendent, Oregon State Penitentiary, Respondent–Appellee.**

No. 92–36861.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided July 7, 1994.

---

8. Rutledge received 120 months because of the statutory maximum.

Jane E. Ellis, Portland, OR, for petitioner-appellant.

Thomas H. Denney, Deputy Atty. Gen., Salem, OR, for respondent-appellee.

Before REINHARDT, BRUNETTI, and FERNANDEZ, Circuit Judges.

Opinion by Judge REINHARDT; Concurrence and Dissent by Judge FERNANDEZ.

REINHARDT, Circuit Judge:

Donald Ray Wells, an Oregon state prisoner, appeals the district court's dismissal of his petition for habeas corpus under 28 U.S.C. § 2254. In his petition, Wells argues (1) that he was denied effective assistance of counsel; (2) that the state engaged in prosecutorial misconduct by entering into an unenforceable agreement that any sentences arising from his state convictions would run concurrently with his federal sentences; and (3) that this unenforceable agreement rendered his guilty plea involuntary. The district

court dismissed the ineffective assistance claim as procedurally defaulted and denied the other claims on the merits. Because Wells did not default on the ineffective assistance claim, we reverse the district court's dismissal of this ground for relief. We affirm the denial of Wells's other claims, however.

## I.

In 1985, Donald Ray Wells was indicted in state court in Polk County, Oregon, on three counts of first degree robbery, two counts of attempted murder, two counts of being an ex-convict in possession of a firearm, and one count of unauthorized use of a motor vehicle. At about the same time, he was charged in state court in Marion County, Oregon, with two counts of first degree robbery, and in federal district court with being an armed career criminal. He was convicted of the federal charge and of one count of first degree robbery in the Marion County case.

In the Polk County case, which is the only one challenged in this federal habeas petition, Wells agreed to plead guilty to one count of third degree robbery. He also agreed to a stipulated facts trial on one count of attempted murder, in which he was found guilty. In exchange, the prosecution agreed to dismiss all of the other Polk County charges. The trial court sentenced Wells to 20 years on the attempted murder conviction, and five years on the robbery conviction. In the Marion County case, Wells was sentenced to 20 years on the robbery conviction. In the federal case, he was sentenced to 30 years. All of these sentences were to be served consecutively.

After an unsuccessful direct appeal, Wells filed a petition for postconviction relief in state court. In that petition, Wells claimed that the Polk County prosecutor had agreed in plea negotiations that any sentences arising out of the state charges would be served concurrently with any federal sentences he received. Wells alleged that his trial counsel rendered ineffective assistance by convincing him to agree to this unenforceable plea bargain and then failing to enforce it. He also alleged that the prosecution had engaged in misconduct by knowingly entering into an unenforceable agreement.

The trial court denied postconviction relief and found specifically that "[n]o plea bargain was ever made regarding concurrent sentences." Wells appealed, renewing both his prosecutorial misconduct claim and his ineffective assistance claim. In his brief on appeal, Wells appeared to argue that, even if no enforceable plea agreement existed, trial counsel rendered ineffective assistance by erroneously leading him to believe that such an agreement did in fact exist. The essential premise underlying Wells's objections was that his counsel had assured him that his sentences would run concurrently and that his guilty plea was based on that fallacious advice. The Court of Appeals affirmed without opinion, and Wells filed a petition for discretionary review in the Oregon Supreme Court. The petition seemed generally to incorporate the assignments of error raised in the Court of Appeals. It did not specifically discuss the issue of counsel's incompetence, but it did point out that Wells had no reason to plead guilty other than his desire for concurrent sentences. Wells argued, "[h]ad petitioner known such an agreement was unenforceable, there is every indication that he would not have waived his constitutional rights pursuant to a guilty plea, as he would have received no benefit thereby." The Oregon Supreme Court denied review.

On March 29, 1992, Wells filed a federal habeas petition in the U.S. District Court for the District of Oregon. The petition, which challenged only the Polk County convictions, contained three claims: (1) ineffective assistance of trial counsel; (2) prosecutorial misconduct due to the failure to comply with the agreement that Wells's state sentences would run concurrently with his federal sentence; and (3) involuntariness of Wells's guilty plea arising from the prosecutor's entry into an unenforceable plea agreement. The district court dismissed the ineffective assistance claim as procedurally defaulted. With regard to Wells's second and third claims, the district court considered itself bound by the state postconviction court's finding that no agreement regarding concurrent sentences

**1008**

existed. The court thus denied those claims on the merits. This appeal followed.

## II.

 Wells raised an ineffective assistance claim in his petition for state postconviction relief and in his appeal to the Oregon Court of Appeals from the denial of that petition.[1] His petition for discretionary review by the Oregon Supreme Court did not explicitly refer to counsel's assistance, however. Relying on this fact, the district court dismissed the claim as procedurally defaulted.[2] We conclude that the ineffective assistance claim was properly before the Oregon Supreme Court—and hence not defaulted—under Oregon law. Because the district court did not address the merits of Wells's ineffective assistance claim, we remand for further proceedings on that claim.

 When a state prisoner has defaulted a claim by violating a state procedural rule which would constitute adequate and independent grounds to bar direct review in the U.S. Supreme Court, he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence. *See Coleman v. Thompson,* 501 U.S. 722, 729–30, 750–51, 111 S.Ct. 2546, 2554, 2565, 115 L.Ed.2d 640 (1991). As *Coleman* makes clear, the procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine. *See id.* at 727–31, 111 S.Ct. at 2553–54. It applies only where a prisoner violates a state procedural rule. Even if a prisoner fails to raise a claim in state court, a default will result only if that failure constitutes a waiver under state law. *See Maxwell v. Sumner,* 673 F.2d 1031, 1033–34 (9th Cir.), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982); *see also Brownstein v. Director, Illinois Dept. of Corrections,* 760 F.2d 836,

841 n. 2 (7th Cir.) (" '[P]rocedural default' requires the by-pass of a procedural requirement, and not merely the by-pass of a procedural opportunity.") (citing *Maxwell* with approval), *cert. denied,* 474 U.S. 858, 106 S.Ct. 166, 88 L.Ed.2d 138 (1985). In order to determine whether Wells committed a procedural default, we must first determine whether, in raising his ineffective assistance claim, he failed to comply with some state procedural rule that imposed a penalty of forfeiture.

We conclude that, under Oregon law, Wells did not violate any procedural rule or forfeit his ineffective assistance claim. The petition for review in the Oregon Supreme Court states that "[h]ad petitioner known that such an agreement [regarding concurrent sentences] was unenforceable, there is every indication that he would not have waived his constitutional rights pursuant to a guilty plea." The clear purport of this statement is that he would not have waived his right to a jury trial had Wells's counsel properly advised him regarding whether his sentences would run concurrently. Such a statement could reasonably have been expected to put the Oregon Supreme Court on notice that Wells was challenging the effectiveness of his trial counsel. In context, it is clear that the petition for review was referring to Wells's second assignment of error in his Court of Appeals brief, which explicitly raised the ineffective assistance issue. It is apparent on the face of the petition for review that Wells intended to incorporate by reference both of the assignments of error raised in the Court of Appeals. The first sentence of the "points relied upon for reversal" in the petition states that: "Petitioner [sic] appeal *involved* two assignments of error...." (emphasis added). The claim that Wells would not have pled guilty had he known the agreement was unenforceable appears in a paragraph which begins: "Petitioner's second assignment of

---

1. Although Wells's counsel did not clearly differentiate between them, the claim apparently had two aspects: that trial counsel failed to enforce the agreement with the prosecution regarding concurrent sentences, and that trial counsel erroneously led Wells to rely on his advice that the sentences would be concurrent. As noted *infra,* Wells has over time changed the relative emphasis he has put on the two aspects of the claim.

2. Although Wells's counsel seems to believe the district court denied the petition on exhaustion grounds—and both parties seem indiscriminately to cite exhaustion and procedural default cases—it is clear that the real issue here is procedural default, not exhaustion. Wells no longer has any state remedies available and thus has satisfied the exhaustion requirement. *See Kellotat v. Cupp,* 719 F.2d 1027, 1029 (9th Cir.1983).

error...." In context, this paragraph clearly refers to the second assignment of error in Wells's Court of Appeals brief.

It is equally apparent that Wells's second assignment of error in the Court of Appeals included the claim that his trial counsel was ineffective because he fallaciously "represented to petitioner that any federal sentence imposed would run concurrent to his state sentences." In that section of his Court of Appeals brief, Wells quoted the earlier decision in *Moen v. Peterson*, 103 Or.App. 71, 795 P.2d 1109, 1111 (1990), *aff'd*, 312 Or. 503, 824 P.2d 404 (1991), for its holdings that counsel renders ineffective assistance when he fails "to advise a criminal defendant of the possibility of a minimum sentence under ORS 144.110(1), before entry of a guilty plea" and that "in order to waive knowingly and voluntarily the rights that are forfeited by entering a plea of guilty or no contest, a defendant must be apprised of the full potential for incarceration." Wells argued that he had believed that his state and federal sentences would run concurrently, that "[t]his belief is clearly attributable to his counsel," and that, under *Moen*, "it is petitioner's perception of the potential exposure to incarceration which is of paramount importance." He contended that counsel's failure to accurately advise him of the effects of the guilty plea violated the standards for effective assistance of counsel set forth in *Moen* and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Wells properly raised these arguments before the state Supreme Court by referring in his Supreme Court petition for review to his Court of Appeals brief.

■ In another state, a mere reference to arguments presented in the court of appeals might not be enough to preserve a claim for state supreme court review. Under the Oregon Rules of Appellate Procedure (ORAP),

however, the state Supreme Court often looks to the briefs filed in the Court of Appeals in deciding whether to grant petitions for review and in adjudicating the merits of cases on review. Discretionary review by the Oregon Supreme Court is not limited to questions raised in the petition for review. Instead, the Court may consider any questions which were properly raised in the Court of Appeals:

> If the Supreme Court allows a petition for review, the court may limit the questions on review. If review is not so limited, the questions before the Supreme Court include all questions properly before the Court of Appeals that the petition or the response claims were erroneously decided by that court. The Supreme Court's opinion need not address each such question. *The court may consider other issues that were before the Court of Appeals.*

ORAP 9.20(2) (emphasis added). The Oregon Rules contemplate that the Supreme Court will review all of the arguments raised in the Court of Appeals regardless of the content of the petition. *See* ORAP 9.20(4) ("The parties' briefs in the Court of Appeals will be considered as the main briefs in the Supreme Court, supplemented by the petition for review and any response and additional memoranda that may be filed."). Certainly, they can be expected to review the Court of Appeals briefs where, as here, the petition for review refers specifically to the assignments of error raised in the brief.[3]

The Oregon Supreme Court's willingness to address issues that are not raised in the petition for review is well illustrated by its treatment of cases in which the party who prevailed in the Court of Appeals fails to file a response to the petition. In such cases, the respondent's brief in the Court of Appeals is treated as the response. *See* ORAP 9.10(1). On occasion, the Supreme Court has even

---

**3.** Wells's petition for review also sought to incorporate by reference his Court of Appeals brief in its statement of the facts. The petition's *entire* statement of facts consists of one sentence:

> Petitioner requests that this court rely upon the facts set out in his appellate brief and his supplemental brief as those facts are sufficient to raise the issues contained herein.

That a party seeking review in the state Supreme Court would merely incorporate by reference the facts set out in a brief prepared for the Court of Appeals indicates the great extent to which Oregon practitioners rely on their appellate briefs and not their petitions for review to bring issues to the attention of the Supreme Court. The shortness (barely over two pages) of Wells's petition is another indication of this practice.

treated the respondent's Court of Appeals brief as a *cross-petition* for review, and has granted review on issues raised in the brief, even though the respondent never explicitly sought review. *See Dunlap v. Dickson,* 307 Or. 175, 765 P.2d 203, 206 & n. 4 (1988); *Blair v. Mt. Hood Meadows Development Corp.,* 291 Or. 703, 634 P.2d 241, 242 (1981).[4]

Although the Oregon Supreme Court has at times declined to consider grounds that were not raised in the petition for review, *see Gugler v. Baker County Educ. Serv. Dist.,* 305 Or. 563, 754 P.2d 900, 901–02 n. 3 (1988); *Chesterman v. Barmon,* 305 Or. 439, 753 P.2d 404, 405 n. 2 (1988), the court has always made clear that its actions were rooted in discretion and not jurisdiction. The opinion in *Chesterman* is a good example:

> Neither the petition for review nor the response to the petition raised the issue of summary judgment on the negligent-retention theory. We are not required to address that issue. Although we may address any issue raised to the Court of Appeals, we choose not to address any issue in this case not raised in the petition or the response.

*Chesterman,* 753 P.2d at 405 n. 2; *see also Gugler,* 754 P.2d at 901–02 n. 3 ("declin[ing] to consider" grounds not raised in the petition for review, apparently due to an exercise of discretion and not a lack of power). The Oregon Supreme Court retains the power to address claims which are not raised in the petition for review, and it has exercised this power on multiple occasions.

■ In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default. *See Ford v. Georgia,* 498 U.S. 411, 424–425, 111 S.Ct. 850, 858, 112 L.Ed.2d 935 (1991); *County Court v. Allen,*

442 U.S. 140, 150–51 & nn. 8–10, 99 S.Ct. 2213, 2221 & nn. 8–10, 60 L.Ed.2d 777 (1979); *see also Spencer v. Kemp,* 781 F.2d 1458, 1470–71 (11th Cir.1986) (en banc) (holding that "novel or sporadically applied state procedural grounds," as well as retroactively applied state procedural rules, are "inadequate to preclude federal review of federal constitutional claims"). The Court's occasional practice of declining to consider claims not raised in the petition hardly constitutes the kind of clear, well established, and consistently applied state rule which is required to create a procedural default. Especially where the petition for review itself evidences an intent to bring all of the issues raised in the Court of Appeals before the Supreme Court, there is no procedural default under Oregon law simply because the petitioner did not specifically restate a contention in his petition to the higher court.

As we have noted, Wells's ineffective assistance claim encompassed two separate aspects. The state has not asserted in this court that either of these aspects was not *properly* before the state Court of Appeals because it was *not raised in the state trial court,* nor did the state make such an assertion in the state Court of Appeals. Accordingly, it has waived any claim of procedural default that might have arisen from any possible variance between the ineffective assistance claim Wells raised in the state trial court and the one he raised on appeal. *See Francis v. Rison,* 894 F.2d 353, 355 (9th Cir.1990); *Batchelor v. Cupp,* 693 F.2d 859, 863 (9th Cir.1982), *cert. denied,* 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983); *see also Merlo v. Bolden,* 801 F.2d 252, 255 (6th Cir.1986) ("The state, by failing to assert procedural default [in the state appellate courts], waived the right to assert it as an independent ground to support Merlo's conviction."), *cert. denied,* 480 U.S. 909, 107 S.Ct. 1358, 94 L.Ed.2d 527 (1987).[5]

---

**4.** In one case, the court declined to consider the respondent's Court of Appeals brief as a petition for review on any issues that were not raised by the petitioner. *See McKee Elec. Co. v. Carson Oil Co.,* 301 Or. 339, 723 P.2d 288, 289–90 (1986).

**5.** We do not mean to suggest that Wells failed sufficiently to raise either of his ineffective assistance theories in the state trial court. Under the

Oregon Rules of Civil Procedure (ORCP), which are generally employed in post conviction proceedings, *see Palmer v. State,* 121 Or.App. 377, 854 P.2d 955, 956 (1993), *aff'd in part and vacated in part on other grounds,* 318 Or. 352, 867 P.2d 1368 (1994), pleadings must "be liberally construed with a view of substantial justice between the parties." ORCP 12(A). We believe that the allegations in the trial court were suffi-

We conclude that Wells adequately raised his ineffective assistance claim in the state Supreme Court under Oregon law by referring in his petition for review to the issues raised in his Court of Appeals brief.[6] Accordingly, he did not commit a procedural default with respect to this claim.[7] The district court's dismissal of the ineffective assistance allegations must therefore be reversed.

### III.

■ The second and third claims in Wells's federal habeas petition allege that he was the victim of prosecutorial misconduct and that his guilty plea was involuntary. Both of these claims focus on the prosecution's alleged entry into—and subsequent violation of—an unenforceable plea agreement with Wells. Specifically, Wells claims that the government entered into an unenforceable agreement that any prison terms imposed for his state convictions would run concurrently with his federal sentence. He argues that the prosecutors' entry into this agreement constituted prosecutorial misconduct and that the agreement coerced him into waiving his right to a jury trial on the robbery and attempted murder charges. The state postconviction court, however, specifically found that "[n]o plea bargain was ever made regarding concurrent sentences." Relying on this finding, the district court dismissed Wells's claims relating to the alleged agreement. We conclude that the state court finding is entitled to a presumption of correctness, and that Wells has not rebutted this presumption. Thus, we affirm the denial of the Writ on Wells's second and third claims.

■ Under 28 U.S.C. § 2254(d), state court findings of fact are presumed correct in federal habeas proceedings. Although a federal habeas court reviews de novo a state court's conclusion that a waiver was voluntary or involuntary, the state court's findings of "[h]istorical or subsidiary facts" underlying this ultimate conclusion are entitled to the presumption of correctness. *Collazo v. Estelle*, 940 F.2d 411, 415 (9th Cir.1991) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992). Unless one of the exceptions to § 2254(d) applies, a federal habeas court may overturn a state court fact finding only if the petitioner shows by convincing evidence that the finding was erroneous. *See* 28 U.S.C. § 2254(d).

Independently reviewing the state court proceedings, we can discern no exception to § 2254(d) which appears to apply in this case, and Wells does not point out any exception which might apply. In addition, Wells has not demonstrated that the state court finding is clearly erroneous. Indeed, it is amply supported by the record. The prosecutor testified that he never agreed that Wells's federal prison sentences would run concurrently with his state sentences. The prose-

cient to raise *both* ineffective assistance theories under this rule.

6. Two Supreme Court cases involving states other than Oregon have concluded that a failure to raise a claim in a petition for review constituted a default, *see Murray v. Carrier*, 477 U.S. 478, 482, 106 S.Ct. 2639, 2642, 91 L.Ed.2d 397 (1986); *Beck v. Washington*, 369 U.S. 541, 552–53, 82 S.Ct. 955, 961–62, 8 L.Ed.2d 98 (1962). These cases are inapposite, for two reasons. First, in neither of these cases did the petition for review on its face seek to bring before the state Supreme Court all of the claims raised in the Court of Appeals. Second, the cases involved state rules that were different from the Oregon rule, in at least one critical respect. The state rules the Court was construing in *Carrier* and *Beck* did not allow parties to argue claims in the Supreme Court unless those claims were specifically "assigned" in the petition for discretionary review. The Oregon rule is directly to the contrary. *Carrier* involved a Virginia rule which

provided that "[o]nly errors assigned in the petition for appeal will be noticed by this Court, and no error not so assigned will be admitted as a ground for reversal of a decision below." 477 U.S. at 482, 106 S.Ct. at 2642. Similarly, *Beck* involved a Washington rule which provided that "[n]o alleged error of the superior court will be considered by this court unless the same be definitely pointed out in the 'assignments of error' in appellant's brief." 369 U.S. at 552, 82 S.Ct. at 961. The leniency of Oregon's rules regarding the raising of issues in the state Supreme Court makes this a wholly different case from *Carrier* and *Beck*.

7. In concluding that Wells did default, the district court relied on the fact that it is now too late for Wells to file a new petition for review raising the ineffective assistance claim in the Oregon Supreme Court. However, this fact is simply irrelevant. Wells properly raised the issue in his initial petition for review; accordingly, he did not default.

cutor also stated that he understood that Wells's federal and state sentences would run *consecutively*, although there was some chance that once Wells began serving his sentence some device might be employed to lessen his prison time. He testified that he related this understanding to Wells's trial counsel.

The testimony of Wells's trial counsel, Joseph Penna, is not inconsistent with the prosecutor's account. Although Penna testified that he told Wells that any federal prison sentence would run concurrently to his state sentence, he never stated that the prosecutor agreed to this condition. On direct examination, Penna testified as follows:

A. .... Mr. Wells was inclined to go to trial but when he learned as a result of my conversations with Mr. Avera [the prosecutor] that a federal charge that was facing him toward the end of his state prosecution under the armed career criminal act would result in a 15–year mandatory minimum sentence, and when I advised him following my conversations with Mr. Avera, that whatever we did in State Court would be rendered moot by the federal mandatory minimum, Mr. Wells agreed to accept the plea bargain that was offered to him.

Q. Was the fact that the federal time was going to run concurrent part of your plea agreement with Mr. Avera?

A. Well, I knew Mr. Avera could not bind the federal authorities, but part of the agreement was based on the representations that he had made to me in terms of what he had learned in his discussions with federal and State parole and probation authorities.

Later, Penna testified:

Q. Mr. Penna, did Mr. Wells' plea rest in a significant degree on this promise or agreement with the prosecutor regarding concurrent federal time?

A. I don't see it as a promise or an agreement on the part of the District Attorney, but I believe that Mr. Wells did substantially rely on the understanding that the federal time would be given credit toward the state time, yes.

Penna stated that he thought that Wells decided to plead guilty only because he believed that his sentences would run concurrently. Nevertheless, Penna also testified that he did not remember whether he had told Wells that the state prosecutor could not bind the federal government to a concurrent sentence arrangement.

Wells was the only person who clearly testified that the state agreed that his federal and state sentences would run concurrently, but there was no evidence that he ever directly negotiated with the prosecutor. He stated that Penna told him his federal and state time would run concurrently. He also testified that he would not have pleaded guilty if he thought the sentences would be imposed consecutively.

Wells also stated that Penna showed him a plea petition, which provided that the terms would be concurrent. Wells introduced a copy of this petition in the state postconviction proceeding. It said that the state had promised that "FEDERAL SENTENCE WILL RUN CC." This petition was not notarized, however, and Wells's trial counsel admitted that he had never offered it to the trial court or put it on the record. Indeed, the record does not indicate that Wells's trial counsel ever told the court that the plea bargain included an agreement that the state and federal sentences would run concurrently, although the court was informed of the other aspects of the plea bargain. Finally, the prosecutor's uncontradicted affidavit stated that the trial judge had a "strict rule" of refusing to enforce plea bargains which affected sentencing and that the county prosecutor accordingly refused to engage in sentence bargaining before that judge. Wells's trial counsel testified that he knew these facts.

One could fairly conclude from this testimony that Penna received the erroneous impression from his conversations with the prosecutor that the federal sentence would effectively moot any state sentence because the sentences could run concurrently. One could further conclude that Penna, who knew that the state prosecutor had no power to bind the federal authorities, failed to inform Wells of this fact and thus (negligently or

otherwise) led him to believe that the prosecutor had agreed to concurrent time.[8] While these facts may provide strong evidence of ineffective assistance of counsel, they do not establish that the prosecutor actually entered into an agreement regarding concurrent sentences.

In these circumstances, the state court's finding that no such agreement existed seems well supported by the record. The presumption of correctness thus stands unrebutted. The district court did not err in dismissing Wells's second and third claims.

### IV.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings on Wells's ineffective assistance claim.

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in Parts I and III of the majority opinion. However, I dissent from Part II because I do not think that Wells raised the incompetence of counsel issue, which he now seeks to raise, when he filed his petition for review in the Oregon Supreme Court. He was required so to do. *See* Or.R.App.P. 9.05(3)(b), (d) and (4). Indeed, he could not properly raise the issue there because he had not done so in the Oregon Circuit Court. *Cf. State v. Castrejon*, 317 Or. 202, 856 P.2d 616, 621–22 (1993). I recognize that if it decided to hear the petition, the Oregon Supreme Court could have considered issues which were properly raised in the Court of Appeals but not raised in the petition before it. *See* Or.R.App.P. 9.20(2). However, I do not consider that to be relevant. The court did not so decide; it denied review. In short, as the district court found, Wells procedurally defaulted on the claim.

8. The state court made no findings of fact regarding what Penna told Wells, but the testimony makes clear that Penna told Wells that his state sentence essentially did not matter because the long federal mandatory minimum would make it moot.