Tracy PETROCELLI, Petitioner–
Appellant,

v.

Ron ANGELONE, Respondent–
Appellee.

No. 97–99029.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 29, 2000

Filed March 8, 2001

Paul G. Yohey and Fred Hill Atcheson, Reno, Nevada, for the petitioner-appellant.

Julie A. Slabaugh, Deputy Attorney General, Carson City, Nevada, for the respondent-appellee.

Franny A. Fosman, Federal Public Defender, Michael Pescetta, Assistant Federal Public Defender, Las Vegas, Nevada, as amica curiae in support of the petitioner–appellant.

Before: PREGERSON, RYMER, and TASHIMA, Circuit Judges.

## OPINION

TASHIMA, Circuit Judge:

Tracy Petrocelli, a Nevada state prisoner under sentence of death, appeals the district court's dismissal of his petition for a writ of habeas corpus asserting 28 grounds of relief. Petitioner argues that the district court erred in holding that: (1) petitioner had procedurally defaulted grounds 14–25; (2) he had abused the writ with respect to grounds 6, 9, and 26–28; and (3) grounds 1 and 12 were meritless.[1] The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2241. Our jurisdiction rests on 28 U.S.C. §§ 1291 and 2253. In light of the Supreme Court's recent holding in *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000),[2] we vacate our earlier order granting a certificate of probable cause ("CPC") and treat petitioner's notice of appeal as a request for a certificate of appealability ("COA"). *See id.; Schell v. Witek*, 218 F.3d 1017, 1021 n. 4 (9th Cir. 2000) (en banc). We conclude that petitioner has presented valid arguments in favor of a COA on all of the appealed grounds (1, 6, 9, 12, and 14–28), and we accordingly grant COAs as to all of them. We affirm on the merits the district court's denial of relief on grounds 1 and 12. We reverse the district court's rulings that the remaining certified grounds (6, 9, and 14–28) are procedurally barred, and we remand for further proceedings with respect to each of those grounds.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Nevada Supreme Court, on direct appeal, found the following:

Tracy Petrocelli's journey to Reno began in Washington where he killed his fiancee. He fled Washington and apparently drove to Colorado in a Corvette, to Oklahoma in a van and to Reno in a Datsun which he stole while "test driving" the vehicle. Upon arriving in Reno, Petrocelli decided he needed a four-wheel drive truck to get around in the snow. The next day, his search for a vehicle ultimately led to a local used car dealer. The dealer, James Wilson, acceded to Petrocelli's request for a test drive of a Volkswagen (VW) pickup, and the two drove off with the dealer at the wheel. At about 1:30 p.m., a Dodge dealer saw them driving north on Kietzke Lane. Approximately forty-five minutes later, a Reno patrolman saw one person driving a truck matching the description of the VW speeding toward Pyramid Lake.

That evening, Petrocelli was picked up on the Pyramid Highway and given a ride to Sutcliffe. He told the driver that his motorcycle had broken down. In Sutcliffe, Petrocelli got a ride to Sparks with a local game warden. Petrocelli then took a cab to Reno and apparently paid his fare from a two-inch roll of bills. The next day, the game warden and his partner looked for Petrocelli's motorcycle. Instead, they found the VW truck with bloodstains and bullet holes on the passenger side. The car dealer's body was found later that day in a crevice, covered with rocks, sagebrush and shrubbery. His back pockets were turned slightly inside out and empty; his wallet was missing. The victim, who usually carried large amounts of cash with him, had been shot three times with a .22 caliber weapon. One shot was to

---

**1.** Petitioner presents no argument on appeal in support of Claims 2–5, 7, 8, 10, 11, and 13; thus, we deem these grounds to be abandoned.

**2.** *Slack* was decided on April 26, 2000, two months after oral argument in this case.

the neck; another shot was to the heart. The third shot was to the back of the head from a distance of two to three inches. In the abandoned truck, .22 caliber bullet casings were found. When he was arrested, Petrocelli was carrying a .22 caliber semi-automatic pistol which he testified he always carried loaded and ready to fire. Ballistics tests on the casings found in the abandoned VW revealed that they had been fired from Petrocelli's pistol. Tests on the bullet found in Wilson's chest and a test bullet fired from Petrocelli's pistol also revealed similar markings.

At trial, Petrocelli provided his own account of the killing. After driving off the car lot, the car dealer stopped at a gas station and filled the truck. From the station, Petrocelli drove the truck. He and Wilson proceeded to argue about the price of the truck. Petrocelli laid $3,500.00 on the dashboard and offered a total of $5,000.00 cash. The car dealer was insulted and called him a "punk." Later, on the way back, Wilson twice grabbed for the steering wheel. Petrocelli then pulled out his pistol and said: "Now who is the punk." The victim laughed and said he had a gun also, although Petrocelli never saw one. The car dealer tried to take the pistol from Petrocelli as he continued to drive. As they struggled, the gun went off two or three times. Petrocelli testified, "I knew it was shooting, and I was just trying to pull it away from him. . . . It was an accident. It was an accident. I didn't do anything. I just tried to keep him from getting the gun." Petrocelli drove to a nearby doctor's office, went up to the door, but did not go in because he "didn't know how to tell him [doctor]

there was someone hurt, shot in the car." Thereafter, Petrocelli went to a bowling alley and called the hospital, but "didn't know what to say." He then returned to the truck, drove to Pyramid Lake and hid the car dealer's body under some rocks. Petrocelli began walking after his truck bogged down, but then returned to the vehicle to retrieve his gloves and the gun. He also picked up the car dealer's wallet, took his money, threw the business and credit cards into the wind, and discarded the wallet. Petrocelli then walked to the highway where he obtained rides back to Reno.

*Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503, 505–06 (1985) (emendations in the original.) Petitioner was then arrested by a SWAT team in his home, taken outside and handcuffed. The police performed a protective sweep of the house and found the pistol, in a flight bag, in the bedroom closet.

In April 1982, petitioner was indicted for first-degree murder and robbery with use of a deadly weapon. On April 20 and 21, 1982, petitioner was interviewed by the police and deputy district attorneys. Petitioner requested to see, and was interviewed by, a psychiatrist, on April 21, 1982.

On August 5, 1982, Petrocelli was convicted by a jury of first-degree murder and robbery with use of a deadly weapon. The jury did not indicate whether the first-degree murder conviction was for premeditated and deliberate murder or felony murder.[3] During the penalty phase, the jury was presented with evidence of aggravating and mitigating factors. The state presented aggravating evidence that: (1) Petrocelli had previously been convicted of a violent felony (the kidnapping of his fian-

---

**3.** Both theories supported a first-degree murder conviction. *See Standen v. State*, 99 Nev. 76, 657 P.2d 1159, 1160 (1983).

cee); and (2) the murder was committed in the course of committing, or attempting to commit, or flight after committing or attempting to commit, robbery. Petrocelli offered evidence of his emotional and childhood problems as mitigating factors. The jury found the mitigating factors insufficient to outweigh the two aggravating factors, and imposed a death sentence. Petrocelli was also sentenced to a consecutive 15–year term for armed robbery enhanced by 15 years for use of a pistol.

Petrocelli appealed his conviction and sentence to the Nevada Supreme Court on five grounds: First, he argued that the state trial court mischaracterized the reasonable doubt instruction to the jury (ground 1 of the present petition). Second, Petrocelli contended that admission of the prior bad act of his killing of his fiancee, Melanie Barber, violated state evidence rules (ground 2). Third, he argued that because he may have been convicted of felony murder, utilization of the underlying felony as an aggravating circumstance, without any proof of intent to kill, violated due process as a disproportionate sentence (ground 3). Fourth, he claimed that instructing the jury at sentencing of the possibility of pardon or parole violated state law and the Eighth and Fourteenth Amendments of the United States Constitution (ground 4). Fifth, he argued that the death sentence was disproportionate to the penalty imposed in similar cases (ground 5). The Nevada Supreme Court rejected all grounds of requested relief and affirmed the conviction and sentence. See Petrocelli, 692 P.2d at 503–12. Petrocelli unsuccessfully petitioned for rehearing.

On August 12, 1985, Petrocelli filed his first petition in state district court for post-conviction relief. He claimed ineffective assistance of counsel at both the guilt phase and the penalty phase in that trial counsel: (1) failed to obtain allegedly exculpatory evidence of his financial condition from the prosecution and government (grounds 7 and 8 in the present petition); (2) advised Petrocelli to testify on his own behalf (ground 10); (3) failed to call Dr. John Petrich, a psychologist, to testify on Petrocelli's behalf (ground 11); (4) failed to object to evidence of Petrocelli's prior kidnapping conviction as an aggravating factor (ground 12); and (5) failed to call Lloyd Johnson, a prisonmate of Petrocelli's who allegedly would rebut testimony of another of Petrocelli's prisonmates (ground 13). The state district court denied relief on all grounds, and the Nevada Supreme Court affirmed.

Petitioner then filed a petition for writ of habeas corpus in federal district court. Because the petition contained exhausted and unexhausted claims, it was dismissed without prejudice. Petitioner filed a second post-conviction petition in state court to exhaust his claims. The Nevada Supreme Court eventually held that all of the claims were procedurally barred. Petitioner then filed an amended petition in federal district court alleging 28 grounds of relief. The district court found that five of the grounds (6, 9, and 26–28) were an abuse of the writ, because they had not been included in the initial petition dismissed without prejudice by the district court. The court also found that grounds 14–25 were procedurally defaulted and that no cause and prejudice existed to excuse the default. The district court found that under Moran v. McDaniel, 80 F.3d 1261, 1269 (9th Cir.1996), the Nevada Supreme Court consistently applied its procedural bar rules. The district court also found that petitioner could not show cause, because there is no right to effective assistance of post-conviction counsel. The court then held that ground 1, which alleged an improper quantification of reasonable doubt by the state trial court, was

meritless under *Guam v. Ignacio*, 852 F.2d 459 (9th Cir.1988). It also found ground 12 meritless because there was sufficient evidence to show that petitioner's prior kidnapping crime was a "conviction" for purposes of being considered as an aggravating factor for sentencing. The court also dismissed grounds 2–5, 7, 8, 10, 11, and 13 as meritless.

On October 15, 1997, Petrocelli filed a timely notice of appeal. The district court denied a request for a CPC on November 20, 1997, but we subsequently granted one.

Petrocelli does not appeal all of the district court's determinations. In particular, Petrocelli only argues on appeal that the district court erred in finding: (1) procedural default of grounds 14–25; (2) abuse of the writ of grounds 6, 9, and 26–28; and (3) grounds 1 and 12 meritless.

## II. STANDARD OF REVIEW

■ In *Slack*, the Supreme Court held that the right to appeal from a denial of the writ of habeas corpus is governed by the COA requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so long as the notice of appeal is filed after April 24, 1996, the effective date of the AEDPA. *See Slack*, 120 S.Ct. at 1603. Unlike the CPC, each issue sought to be appealed under AEDPA must be ruled on separately by the district court, or this court, on the request for a COA. *See Hiivala v. Wood*, 195 F.3d 1098, 1103 (9th Cir.1999), *cert. denied*, 529 U.S. 1009, 120 S.Ct. 1281, 146 L.Ed.2d 228 (2000).

■ The rule announced in *Slack* was applied to the case pending before the Court; thus, the holding of that case is retroactive to pending cases. *See Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."); *Nevius v. McDaniel*, 218 F.3d 940, 942 (9th Cir.2000) (applying *Slack* to a pending appeal).

■ Petitioner's notice of appeal was filed after the effective date of the AEDPA. Accordingly, we vacate our earlier order granting petitioner a CPC, treat petitioner's notice of appeal as an application for a COA,[4] and review his putative appeal with respect to each requested ground of relief to determine whether a COA should issue. Petitioner must make a "substantial showing of the denial of a constitutional right" with respect to each issue sought to be appealed. *Slack*, 120 S.Ct. at 1603 (quoting 28 U.S.C. § 2253(c)). Where, as here, the district court denies a habeas petition on procedural grounds without reaching the merits of the underlying constitutional claims,[5] that determination has two components, "one directed at the underlying constitutional claims and one directed at the district court's procedural holding." *See id.* at 1604. In such a case,

> a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, [1] that

---

4. Petitioner, subsequent to the decision in *Slack*, also filed a motion in this court for a COA. Whether we treat petitioner's notice of appeal as an application for a COA or proceed under petitioner's motion does not affect the result we reach.

5. For constitutional claims rejected on the merits by the district court, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims is debatable or wrong." *Slack*, 120 S.Ct. at 1604.

jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.* at 1600–01; *see also id.* at 1604. We may proceed to resolve either issue first, if the "answer [as to that issue] is more apparent from the record and arguments."[6] *Id.* at 1604. Finally, we are also mindful of the fact that " '[i]n a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of [appealability].' " *Lambright v. Stewart,* 220 F.3d 1022, 1025 (9th Cir.2000) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). Thus, "[w]e will resolve any doubt about whether the petitioner has met the [requisite] standard in his favor." *Id.*

## III. DISCUSSION

### A. COAs

#### 1. Grounds 6, 9, and 26–28: Abuse of the Writ

When petitioner filed his first federal habeas petition, the district court dismissed it without prejudice, because it contained unexhausted claims. Petitioner then filed a second state petition for post-conviction relief to meet the exhaustion requirements. When petitioner filed his amended federal petition, he asserted that ground 6 was "exhausted on direct appeal," ground 9 was "partially exhausted on petitioner's first petition for state post-conviction relief," and grounds 26–28 were "raised for the first time."

The district court found that "[t]he characterization of ground 9 has been materially changed from that which was presented to the state courts." It also found that there was no exhaustion of ground 6 because "it was raised for the first time on a petition for rehearing in the Nevada Supreme Court," and the "state supreme court does not consider issues raised for the first time on appeal."[7] Finally, the district court found grounds 26–28 could not be exhausted, because petitioner admitted they were now being raised for the first time. The district court further held, under *Farmer v. McDaniel,* 98 F.3d 1548 (9th Cir.1996), *cert. denied,* 520 U.S. 1188, 117 S.Ct. 1474, 137 L.Ed.2d 686 (1997), *overruled by Slack,* 120 S.Ct. at 1605, that all of the claims should be dismissed for abuse of the writ, because none of them had been fully presented to the court in the original habeas petition, and also because petitioner failed to include the new, non-exhausted claims in his second state petition. *See Calderon v. United States Dist. Court (Kelly),* 163 F.3d 530, 538 (9th Cir.1998) (en banc), *cert. denied,* 526 U.S. 1060, 119 S.Ct. 1377, 143 L.Ed.2d 535 (1999) (noting that generally the abuse of the writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition").

Petitioner contends that the district court erred in dismissing the claims as an abuse of the writ, but he does not contest the finding that the claims were not exhausted. Under Rule 9(b) of the Rules Governing Section 2254 cases, abuse of the

---

**6.** *Slack* also reminds us of the admonition "not [to] pass upon a constitutional question ... if there is also presented some other ground upon which the case may be disposed of...." 120 S.Ct. at 1604 (citing *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936)). This admonition "encour-ages the court to first resolve procedural issues [and] inform[s] the court's discretion in this regard." *Id.*

**7.** It appears that the district court confused grounds 6 and 9 in its order.

writ may be found only when the new claims are asserted in "[a] second or successive petition." In *Farmer*, on which the district court relied, we held that a petition filed after one previously dismissed without prejudice for exhaustion in state court could be a "second or successive" one for purposes of abuse of the writ. *Farmer*, 98 F.3d at 1556. In *Slack*, however, the Supreme Court overruled *Farmer*, holding that such an amended petition is *not* a "second or successive petition" for purposes of abuse of the writ. 120 S.Ct. at 1605. The *Slack* rule applies even to claims not contained in the original petition, but that are later asserted in an amended petition. *See id.* at 1605–06. Thus, we conclude that the district court abused its discretion in dismissing these claims as an abuse of the writ.[8]

■ Our conclusion in this regard more than meets *Slack*'s requirement that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1600–01. We therefore proceed to the second part of the COA analysis under *Slack*, namely, whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Id.*

■ Because the district court dismissed these claims on procedural grounds, petitioner has not had an opportunity to support them on the merits through briefing or argument, or the introduction of evidence. In *Lambright v. Stewart*, 220 F.3d 1022 (9th Cir.2000), we encountered precisely this situation, and we held that "we need not remand for full briefing to determine whether a COA can issue." *Id.* at 1026. Rather, "we will simply take a 'quick look' at the face of the complaint to determine whether the petitioner has 'facially allege[d] the denial of a constitutional right.' " *Id.* (citing *Jefferson v. Welborn*, 222 F.3d 286, 289 (7th Cir. 2000); *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir.2000)). If so, we will grant a COA. *Id.*

Accepting petitioner's allegations as true and taking a quick look at the underlying merits, we conclude that in each of grounds 6, 9, and 26–28, petitioner has facially alleged the denial of a constitutional right—in particular, they allege violations of petitioner's right to effective assistance of counsel, his due process rights, and his Eighth Amendment rights. *See Lambright*, 220 F.3d at 1028. We therefore grant a COA as to each of those grounds.

## 2. Grounds 14–25: Procedural Default

The Nevada Supreme Court held that all of grounds 14–25 were procedurally defaulted. On that basis, the district court likewise dismissed those grounds as procedurally barred.

■ "In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994). Under *Fields v. Calderon*, 125 F.3d 757,

8. In *Slack*, the Supreme Court noted that "it would be appropriate for an order dismissing a mixed petition to instruct an applicant that upon his return to federal court he is to bring only exhausted claims." 120 S.Ct. at 1606. Here, the district court advised petitioner in the original habeas action that he needed to assert all possible exhausted and unexhausted grounds of relief in that proceeding; otherwise, any new claims would be barred by the abuse of the writ doctrine. We view the district court's admonition to be a reflection of circuit law as it existed at that time, rather than the type of order contemplated in *Slack*.

760–62 (9th Cir.1997), the rule must have been consistently applied at the trigger dates of 1983 (petitioner's direct appeal) *and* 1985 (his first state post-conviction proceeding) in order to be an adequate state ground. Petitioner argues that the district court erred in dismissing grounds 14–25, because the Nevada Supreme Court has not consistently applied its procedural bar rules.

Ninth Circuit case law on this issue is complex. In *McKenna v. McDaniel,* 65 F.3d 1483 (9th Cir.1995), we considered whether a Nevada prisoner's claim regarding his counsel's failure to object to a particular aggravating circumstance had been procedurally defaulted because it was not raised on direct appeal. The Nevada Supreme Court had stated that the claim was defaulted. *Id.* at 1488. But we noted the following passage from the Nevada Supreme Court's opinion in *Pertgen v. State,* 110 Nev. 554, 875 P.2d 361 (1994):

> Moreover, the power of this court to address plain error or issues of constitutional dimension sua sponte is well established. Because this case involves the ultimate punishment and because appellant's claims of ineffective assistance of counsel are directly related to the merits of his claims, we will consider appellant's claims on the merits.

*Id.* at 364. Relying on this language, we concluded that, because the Nevada Supreme Court exercises discretion to hear the merits of federal constitutional claims, the procedural bar was not adequate. *See McKenna,* 65 F.3d at 1488–89.

However, in *Moran v. McDaniel,* 80 F.3d 1261 (9th Cir.1996), we held that the Nevada Supreme Court does consistently apply certain timeliness bars, namely, Nev. Rev.Stat. §§ 34.726, 34.800. *See Moran,* 80 F.3d at 1268–70. Section 34.726 re-

quires state post-conviction petitions to be filed no later than one year after the entry of judgment, unless good cause is shown. *See* Nev.Rev.Stat. § 34.726. Section 34.800 mandates dismissal of a petition where the state's ability to respond to the petition is prejudiced by any delay in filing, unless the petitioner can show good cause. *See* Nev.Rev.Stat. § 34.800. Our holding was limited to these timeliness bars, and we distinguished *McKenna* by stating:

> *McKenna* involved defense counsel's failure to object to a constitutionally vague jury instruction on depravity as an aggravating circumstance. We held the Nevada courts had not consistently treated the failure to object to constitutional error in an instruction as a procedural bar to review of a constitutional claim in a death penalty case.

*Moran,* 80 F.3d at 1270.

Finally, in *Bargas v. Burns,* 179 F.3d 1207 (9th Cir.1999), we held that the Nevada Supreme Court has consistently applied a rule barring claims that were raised and denied in a state post-conviction proceeding but whose denial was not then appealed. *See id.* at 1210–13. We reasoned that such a rule followed from the well-established and consistently applied rule that petitioners must raise all of their claims at the earliest time possible. *See id.* at 1210–11.

All three of these cases are good law— *Moran* and *Bargas* did not (and could not[9]) overrule *McKenna.* But the cases are not easy to reconcile—*McKenna* contains broad language suggesting that no Nevada procedural bars can ever be adequate, while *Moran* and *Bargas* clearly hold that some can.

---

9. *See Branch v. Tunnell,* 14 F.3d 449, 456 (9th Cir.1994) (noting the general rule that a three-judge panel cannot overrule previous decisions of this court).

In view of this tension in our case law regarding the adequacy of Nevada's procedural bars, we find that jurists of reason would find it debatable whether the district court was correct in its procedural ruling dismissing grounds 14–25. Because each of those grounds also facially alleges the denial of a constitutional right—in particular, petitioner's Fourth Amendment right to be free from unreasonable searches and seizures,[10] his rights to effective assistance of counsel and to due process, his Fifth Amendment right against self-incrimination, and his Sixth Amendment right to counsel—we grant COAs as to all of them.

### 3. Grounds 1 and 12

The district court denied relief on grounds 1 and 12 on the merits. In ground 1, petitioner argues that the state trial court improperly quantified reasonable doubt in explaining the standard to the jury during voir dire, thereby violating due process. In ground 12, petitioner argues that his trial counsel's failure to object to the introduction, at the sentencing phase, of evidence of petitioner's kidnaping of his fiancee constituted ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because the kidnapping did not constitute a prior "conviction."

We find that jurists of reason would find the district court's assessment of these claims debatable, so we grant COAs as to both.

### B. Merits

#### 1. Grounds 6, 9, and 26–28

For the reasons set forth in Part III.A.1, *supra,* we reverse the district court's dis-

missal of grounds 6, 9, and 26–28 as abuses of the writ, and we remand those grounds to the district court for a determination either on other procedural grounds or on the merits.

#### 2. Grounds 14–25

As discussed in Part III.A.2, *supra,* there is tension in our case law on the consistency of Nevada's application of its procedural bar rules. Nonetheless, upon consideration of the pertinent cases and their application here, we conclude that *McKenna* is controlling and that *Moran* and *Bargas* are distinguishable. Accordingly, we hold that the district court erred in ruling that grounds 14–25 were procedurally barred.

*Moran* dealt only with two timeliness bars, Nev.Rev.Stat. §§ 34.726, 34.800, which are not at issue here. In addition, the trigger date in *Moran* was 1987, the year in which Moran's conviction was affirmed on direct appeal. *See* 80 F.3d at 1265. As noted earlier, the trigger dates in this case are 1983 and 1985, thus limiting *Moran*'s applicability. For these reasons, we do not find *Moran* to be controlling.

*Bargas* is distinguishable because it was not a capital case, and the Nevada courts are less strict in applying procedural bars to constitutional claims in capital cases than in non-capital cases. *See Jones v. State,* 101 Nev. 573, 707 P.2d 1128, 1133 (1985) ("In a capital case where the record is sufficiently developed to provide an adequate basis for review and to demonstrate that fundamental rights are implicated, it is appropriate to hear a constitutional question for the first time on appeal.");

---

10. We express no opinion on whether "the State has provided an opportunity for full and fair litigation of [the] Fourth Amendment claim," *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *see Anderson v. Calderon,* 232 F.3d 1053, 1068 (9th Cir.2000), as this is not a question we can address on this record.

*Hill v. State,* 114 Nev. 169, 953 P.2d 1077, 1083–84 (1998) (reaching the merits of an Eighth Amendment claim and an ineffective assistance of counsel claim despite the petitioner's failure to bring them in prior proceedings); *Paine v. State,* 110 Nev. 609, 877 P.2d 1025, 1028–29 (1994) (stating that because of "the gravity of [the petitioner's] sentence," the court would reach the merits of an issue despite the fact that the law of the case should have precluded review); *Pertgen,* 875 P.2d at 364 (reaching an otherwise defaulted claim in part because the "case involve[d] the ultimate punishment"); *Flanagan v. State,* 104 Nev. 105, 754 P.2d 836 (1988) (reaching the merits of a defaulted claim because in a capital case, "a life is at stake").

*McKenna* is not distinguishable on any of these grounds: It involved procedural default through failure to raise a claim in a prior proceeding (which is the procedural bar at issue here), 1985 was the trigger date, and it was a capital case. *See McKenna,* 65 F.3d at 1487–88. In addition, *McKenna*'s holding regarding discretionary application of the relevant procedural bars is supported by the Nevada case law. *See, e.g., Warden, Nevada State Prison v. Lischko,* 90 Nev. 221, 523 P.2d 6, 7 (1974) ("Although the district court properly *may* have refused to entertain Lischko's post-conviction petition because of his failure to urge the incompetency of trial counsel as a claim of error upon direct appeal, it chose instead to conduct an evidentiary hearing and rule upon the merits. That choice fell within its discretionary power." (emphasis added) (footnote omitted)).

Because we find *McKenna* to be controlling, we reverse the district court's dismissal of grounds 14–25 as procedurally barred. We accordingly remand those grounds to the district court for a determination either on other procedural grounds or on the merits.

### 3. Ground 1

■ We affirm the district court's denial of relief on ground 1. Petitioner argues that the state trial court improperly quantified reasonable doubt in explaining the standard to the jury during voir dire, thereby violating due process. Petitioner contends that the state district court violated his federal due process rights when it stated:

> Now in a civil case ... it's kind of a $^{50}/_{50}$ proposition. But there is no 60/40, 70/30, 90/10 proposition in proving a case by a certain amount of evidence in a criminal case, because the burden, the standard is beyond a reasonable doubt.... Some people say you have got to be convinced, and then others use, sports minded, use a kind of athletic football field, getting to the 97 yard line. There are all kinds of ways to say it, but it is being strongly convinced of the Defendant's guilt, or else he is acquitted.

The federal district court correctly relied on *Guam v. Ignacio,* 852 F.2d 459 (9th Cir.1988), to reject petitioner's claim that the state district judge violated petitioner's due process rights by referring to the "97 yard line." In *Ignacio,* the trial judge gave an incomplete reasonable doubt instruction at the beginning of trial but used the correct instruction at the end of trial. *See* 852 F.2d at 461. We found that in so doing, the trial judge did not "prejudice or mislead[ ] the jury in a material way." *Id.*

Similarly, even if the judge improperly advised the jury by quantifying the level of doubt in petitioner's case, the judge, during voir dire and in his closing instructions to the jury, gave a proper reasonable doubt instruction. As in *Ignacio,* "[b]ecause the trial judge used the correct instruction at the end of trial and because

the correct instruction was the only instruction given to the jury to take with them to the jury room, it [should be] presumed that the jury followed the correct instruction." *Ignacio,* 852 F.2d at 461.

Petitioner's attempts to distinguish *Ignacio* are unconvincing. Petitioner argues that the state trial judge did not merely give an incomplete instruction but an incorrect explanation which "could not be corrected merely by giving the jury an instruction with additional language." Petitioner further contends that this court's endorsement of the proper instruction in *Ramirez,* 136 F.3d 1209, was not "sterling" and that, combined with the "97 yard line" remark, the otherwise proper instruction violates due process. Yet, the "97 yard line" statement was more an off-hand remark about how some people characterize reasonable doubt than a direct instruction and, given that the trial judge gave the correct instruction both during voir dire and before jury deliberation, it is very unlikely that the instruction "produce[d] prejudice or mis[led] the jury in a material way," as required for reversal under *Ignacio.* Here, the "97 yard line" remark was not made as an instruction, but as an explanation during voir dire to see if the jurors could apply the burden.

The district court was therefore correct to deny relief on ground 1.

### 4. Ground 12

■ We also affirm the district court's denial of relief on ground 12. Petitioner argues that, at the sentencing phase, the jury improperly considered, as an aggravating factor, evidence of petitioner's kidnapping of his fiancee as a prior "conviction" when, at that time, petitioner had not yet been "convicted" of kidnapping. Petitioner contends that the failure of trial counsel to object to evidence of the kidnapping constituted ineffective assistance of counsel under the *Strickland* standard.

Under Nevada Law, a jury weighs aggravating factors against mitigating factors to determine whether a death sentence is appropriate; if the aggravating factors outweigh the mitigating factors, the jury may, in a first-degree murder conviction, impose a death sentence. *See* Nev. Rev.Stat. §§ 175.554(2),[11] 200.030(4)[12] (1986); *Bennett v. State,* 111 Nev. 1099, 901 P.2d 676, 684 (1995) (holding the jury's imposition of a death sentence to be discretionary). Here, the two aggravating circumstances were (1) the kidnapping as a previous violent felony conviction, and (2) that "the murder was committed while the person was engaged in the commission of

11. Nev.Rev.Stat. § 175.554(2) (1986) states:
 The jury or the panel of judges shall determine:
 (a) Whether an aggravating circumstance or circumstances are found to exist;
 (b) Whether a mitigating circumstance or circumstances are found to exist; and
 (c) Based upon these findings, whether the defendant should be sentenced to life imprisonment or death.
 The jury or the panel of judges may impose a sentence of death only if it finds at least one aggravating circumstance and further finds that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found.

12. Nev.Rev.Stat. § 200.030(4) (1986) states:
 Every person convicted of murder of the first degree shall be punished:
 (a) By death, only if one or more aggravating circumstances are found and any mitigating circumstance or circumstances which are found do not outweigh the aggravating circumstance or circumstances.
 (b) Otherwise, by imprisonment in the state prison for life with or without possibility of parole. If the penalty is fixed at life imprisonment with possibility of parole, eligibility for parole begins when a minimum of 10 years has been served.

or an attempt to commit or flight after committing or attempting to commit a robbery." *See* Nev.Rev.Stat. § 200.033 (1986) (listing aggravating factors for first-degree murder).[13] The jury found the mitigating factors insufficient to outweigh the aggravating factors, and it imposed a sentence of death.

Petitioner is incorrect in his assertion that the kidnapping charge in the state of Washington was not a "conviction" under Nevada law. *See Jones v. State,* 105 Nev. 124, 771 P.2d 154, 155 n. 1 (1989) (applying Nevada law to determine whether a judgment is a conviction). At the time of the penalty phase trial, petitioner had been given, by the Washington state court, a deferred sentence with five years probation and a one-year jail term, suspended so long as petitioner entered a drug treatment program.[14] In March 1983, after the penalty phase trial in this case, petitioner was given a final sentence in Washington of 10 years' imprisonment. Petitioner argues that a deferred sentence does not constitute a judgment of conviction. He contends that, at least as of 1982, Nevada law required that a final judgment be entered in order for a "conviction" to occur for purposes of aggravating circumstances,[15] and that a deferred sentence is not a final judgment.

The Nevada Supreme Court, however, has implicitly considered pronouncements of guilt with impositions of deferred sentences to be judgments of conviction even before Nev.Rev.Stat. § 200.033(4) was amended. In *Hanks v. State,* 105 Nev. 839, 784 P.2d 5 (1989), the Nevada Supreme Court held that there was a "judg-

---

13. Nev.Rev.Stat. § 200.033 (1986) states, in relevant part:

> The only circumstances by which murder of the first degree may be aggravated are:
> 1. The murder was committed by a person under sentence of imprisonment.
> 2. The murder was committed by a person who was previously convicted of another murder or of a felony involving the use or threat of violence to the person of another.
> . . . .
> 4. The murder was committed while the person was engaged, alone or with others, in the commission of or an attempt to commit or flight after committing or attempting to commit, any robbery, sexual assault, arson in the first degree, burglary or kidnaping in the first degree, and the person charged:
> (a) Killed or attempted to kill the person murdered; or
> (b) Knew or had reason to know that life would be taken or lethal force used.
> 5. The murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody.
> 6. The murder was committed by a person, for himself or another, for the purpose of receiving money or any other thing of monetary value.

14. Petitioner received his probation pursuant to Wash. Rev.Code § 9.95.200 (1981), which states:

> After conviction by plea or verdict of guilty of any crime, the court upon application or its own motion, may summarily grant or deny probation, or at a subsequent time fixed may hear and determine, in the presence of the defendant, the matter of probation of the defendant, and the conditions of such probation, if granted. The court may, in its discretion, prior to the hearing on the granting of probation, refer the matter to the secretary of corrections or such officers as the secretary may designate for investigation and report to the court at a specified time, upon the circumstances surrounding the crime and concerning the defendant, his prior record, and his family surroundings and environment.

15. Nev.Rev.Stat. § 200.033(2) has since been amended so that for purposes of an aggravating factor, a conviction occurs once a pronouncement of guilt is made. *See* Nev.Rev. Stat. § 200.033(2) (1999). Although this might be read to favor petitioner's argument, it is not determinative, because the amendment allows the "conviction" of the prior crime to be used well before *any* sentence—deferred or not—is imposed.

ment of conviction" where the defendant received a deferred sentence with probation, as well as civil commitment to a drug treatment program by election of the defendant. *Id.* at 6 ("The district court deferred sentencing, and allowed appellant to elect treatment."). The Nevada Supreme Court further stated that a "judgment of conviction is an absolute prerequisite to such an election." *Id.*

In the instant case, there is no contention that petitioner had any appeals pending in Washington at the time of the penalty phase of the Nevada murder; thus, insofar as the Washington "conviction" was not "final," it was only to the extent that a final sentence had not yet been imposed. *Cf. United States v. Meraz,* 998 F.2d 182 (3d Cir.1993) (finding that a prior conviction in New Mexico was a "final" conviction for purposes of a federal statutory sentence enhancement, even though sentence was deferred for a two-year probationary period, because deferred sentences were appealable final judgments and the defendant had chosen not to appeal). *Hanks,* although it did not directly address the present issue, indicates that a final sentence is not necessary for a "judgment of conviction." Furthermore, there is no indication that the state of the law was any different seven years prior to *Hanks,* in 1982, when petitioner was tried.

Petitioner's reliance on Nev.Rev.Stat. § 176.105, *Fairman v. State,* 83 Nev. 287, 429 P.2d 63, 64 (1967), and *Allgood v. State,* 78 Nev. 326, 372 P.2d 466 (1962), is misplaced. Under § 176.105(1),[16] a judg-

ment of conviction must set forth "the adjudication and sentence," but the statute does not expressly require a non-deferred sentence—indeed, as in *Hanks,* a judgment of conviction may be a deferred sentence plus probation. *Fairman* merely holds that a *jury verdict* is not a final determination amounting to a conviction. *See Fairman,* 429 P.2d at 64. *Allgood* similarly holds that a jury verdict is not appealable before judgment. *See Allgood,* 372 P.2d at 467. *Fairman* and *Allgood* say nothing about deferred sentences. Indeed, being heard in the Nevada Supreme Court, *Hanks* indicates that an imposition of a deferred sentence is an appealable final judgment. *See Hanks,* 784 P.2d at 6 ("This is an appeal from a judgment of conviction. . . .").

 As the state notes, a "certified copy of the judgment of the conviction" is not required to prove a conviction at a penalty phase under Nevada law.[17] Given that a deferred sentence does not preclude a finding of a conviction, petitioner's trial attorney did not render ineffective assistance by failing to object to the admission of evidence of the conviction, or by failing to require a certified copy of the conviction (indeed, the attorney objected to the admission of the details of the conviction). Furthermore, the Nevada Supreme Court—albeit assuming there was a valid conviction—found that there was sufficient evidence to constitute an aggravating factor. *See also Lewis v. Jeffers,* 497 U.S. 764, 780-81, 110 S.Ct. 3092, 111 L.Ed.2d

---

16. Nev.Rev.Stat. § 176.105(1) (1986) states:
 1. If a defendant is found guilty and is:
 . . . .
 (b) Sentenced as provided by law, the judgment of conviction must set forth the plea, the verdict or finding, the adjudication and sentence, and the exact amount of credit granted for time spent in confinement before conviction, if any.

17. In particular, the state cites the Nevada Supreme Court's opinion regarding post-conviction relief in this very case, where the court found that failure to request a certified copy of the kidnapping conviction was not "prejudicial" given the "sufficient proof of the prior offense," including admissions by the petitioner.

606 (1990) ("[F]ederal habeas review of a state court's application of a constitutionally narrowed aggravating circumstance is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eight Amendment violation.").

In sum, because the kidnapping did amount to a prior conviction under Nevada law, there was no Sixth Amendment error. The district court was therefore correct to deny relief on ground 12.

## IV. CONCLUSION

For the reasons set forth above, we **GRANT** the issuance of COAs on all of the grounds for which a COA was requested (1, 6, 9, 12, 14–28), **AFFIRM** the denial of relief on grounds 1 and 12, **REVERSE** the dismissal of grounds 6, 9, and 26–28 under *Slack* and grounds 14–25 under *McKenna*, and **REMAND** grounds 6, 9, and 14–28 to the district court for proceedings consistent with this opinion.

RYMER, Circuit Judge, concurring:

I write separately to note that my concurrence on the merits of the *McKenna* issues [1] is not without reservation. I concur because it is not unreasonable to hold that *McKenna* controls; after all, *McKenna* does say that the Nevada Supreme Court has discretion to review anything for plain constitutional error anytime, therefore perhaps it follows that nothing it ever does is an adequate state ground. I don't agree that this is correct, but *McKenna* is the law of the circuit. Arguably, we could limit *McKenna* to counsel's failure to object to constitutional error in an instruction as a procedural bar to review of a constitutional claim in a death penalty case. We seemed to suggest this was all

*McKenna* held in *Moran v. McDaniel*, 80 F.3d 1261 (9th Cir.1996), yet this does not seem quite right because the procedural default at issue in *McKenna* was the failure to raise the claim of instructional error on appeal. Or we could say that *Bargas v. Burns*, 179 F.3d 1207 (9th Cir.1999), is more on point, for it held that the Nevada Supreme Court has consistently applied a rule barring consideration on the merits of claims that were raised and denied in a state post-conviction proceeding which are not raised in an appeal from denial of that claim in the first state post-conviction proceeding. On this view, *McKenna* would apply to failures to raise a claim of constitutional error on direct appeal (not an adequate state ground) and *Bargas*, to issues not raised in a prior petition for collateral relief (adequate state ground). But *Bargas* does not mention *McKenna*, and is not a capital case. In sum, no effort at reconciliation is really satisfactory. That *McKenna*, *Moran* and *Bargas* are all on the books is bound to cause problems for all concerned with habeas petitions from Nevada. Sooner or later we will have to go en banc to straighten out our law.